# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **William T. Hart** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 852 – 3 | **DATE** | **SEPT.** 19 , 2002 |
| **CASE TITLE** | UNITED STATES OF AMERICA v. FRANK L. PEITZ, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Loutos's request for production of the SEC action memorandum [111] is denied. The copy of the Action Memorandum provided in camera will be placed under seal by the Clerk of the Court and filed of record for any possible review on appeal.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 7 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 20 2002 date docketed | |
| | Notified counsel by telephone. | | | 120 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/19/2002 date mailed notice | |
| | cw | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | MQM mailing    initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
      v.                        )      No. 01 CR 852
                                )
FRANK L. PEITZ, DANIEL B.       )
BENSON, PETER A. LOUTOS, SR.,   )
ROBERT D. PALADINO, RANDALL W.  )
LAW, and MONICA M. ILES,        )
                                )
            Defendants.         )

DOCKETED
SEP 2 0 2002

## **MEMORANDUM OPINION AND ORDER**

The indictment in this case alleges:

defendants FRANK PEITZ, DANIEL BENSON, PETER
LOUTOS, ROBERT PALADINO, RANDALL LAW, MONICA ILES
and others, through FLP Capital, Active
International[, Inc.] and Lennox [Investment
Group, Ltd.], sought to and did obtain and retain
funds from prospective investors and investors by
offering and selling investments purportedly in
the international trading of bank financial
instruments. In offering and selling these
investments, the defendants made and caused to be
made material misrepresentations and omissions
about, among other things: the risk involved
in the investment; the expected return on
the investment; the use of money raised from
investors; and the previous investment experience
and the criminal and regulatory background of
those offering and selling the investment. As a
part of the scheme, the defendants raised over
$11,000,000 from at least 30 investors and then
misappropriated almost all of the funds for their
own benefit. In order to retain the use of
investors' funds and obtain additional funds from
new investors and to conceal various parts of
the scheme from victim investors and others,
defendants continued to lull investors through a
series of misrepresentations and omissions about
the nature and status of their investments as



> well as by repaying earlier, disgruntled
> investors with funds from new investors.

Indictment ¶ 3.

All six defendants are charged with eight substantive counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. The alleged wire communications underlying these counts occurred from October 10, 1996 through May 22, 1997. Defendants Peitz, Benson, Loutos, and Paladino are also charged with a conspiracy in violation of 18 U.S.C. § 1956(h) under which they agreed to (1) engage in wire fraud violations that were designed to conceal the source and ownership of unlawful proceeds in violation of 18 U.S.C. § 1956(a) and (2) engage in monetary transactions in criminally derived property with a value greater than $10,000 in violation of 18 U.S.C. § 1957(a). The conspiracy allegedly began no later than October 1994 and continued until at least June 1998. The four alleged conspirators are also charged with four substantive counts of violating 18 U.S.C. §§ 1957 and 2 and two substantive counts of violating 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

In June 1998, the Securities and Exchange Commission ("SEC") filed a civil action in the Northern District of Texas alleging that certain defendants had defrauded investors utilizing a fictitious "prime bank security" investment that never existed (the "Civil Action"). Law, Iles, Peitz, and Benson were named as defendants in the Civil Action, as well as was James Wardell. Paladino and various entities were named as

- 2 -

relief defendants. A judgment was obtained against all defendants and relief defendants and Michael Quilling was appointed as receiver to obtain and conserve funds on the investors' behalf. When the indictment was returned in the present case, the SEC issued a litigation release stating "[t]he indictment is based on the same conduct alleged in a civil action brought by the Commission's Forth Worth District Office in June of 1998."

Since late last year, defendant Loutos has been trying to obtain a copy of an SEC memorandum discussing his civil or criminal liability related to this case. He contended that the SEC attorney in charge of the Civil Action had told his attorney that such a document existed. However, when Loutos filed motions seeking the document, it was repeatedly represented that no such document could be found. See United States v. Peitz, 2002 WL 226865 (N.D. Ill. Feb. 14, 2002) ("Peitz I"); United States v. Peitz, 2002 WL 453601 (N.D. Ill. March 22, 2002) ("Peitz II"); Govt. Response to Loutos Motion to Renew (May 6, 2002) [Docket Entry 90]. In July 2002, the prosecutors in this case did locate an SEC document that makes reference to Loutos's civil liability. It is a June 17, 1998 Action Memorandum. Loutos moves for disclosure of the Action Memorandum and the government opposes disclosure other than to disclose that there are two references to Loutos in the Memorandum. A copy of the Action Memorandum has been provided to the court in camera.

The Action Memorandum is addressed to the SEC from the Central Regional Office, Forth Worth District Office, with the signature of Harold Degenhardt, a supervising attorney in that office. The Action Memorandum is 21 pages in length, including the two introductory pages that are separately numbered. The Action Memorandum recommends that the SEC take certain action related to a civil investigation of Lennox and related entities and individuals, including all the defendants in the criminal case other than Loutos. This memorandum is obviously a precursor to the authorization to file the Civil Action shortly thereafter. The court lacks sufficient information about the actual Civil Action to determine whether the SEC accepted absolutely all the recommendations contained in the Action Memorandum.

It is in part understandable that this document was not immediately recognized as the document Loutos was seeking since he not only is not listed in the summary recommendation nor any section heading of the memorandum, his name does not actually appear anywhere in the memorandum. There are, however, two direct references to Loutos, who was Benson's attorney during the pertinent time period. In discussing Benson's conduct, it is mentioned that Benson opened a bank account in Lennox's name and that "[o]nly Benson and his attorney were authorized to transfer or withdraw funds from this account." Action Memo. at 6-7. Further down in this section it is mentioned that Benson executed "nearly all" the transactions in this account. The following footnote is added at the end of that sentence: "Benson's

attorney executed at least one transaction when Peitz was unable to locate Benson. However, the staff uncovered no evidence that the attorney knowingly participated in, or was aware of, the scheme to defraud investors." Those are the only two references to Loutos. As can be expected in a memorandum of this type, it discusses the evidence against the proposed civil action defendants, whether the legal standards for securities violations are met, and the type of relief to request. There is nothing that stands out as being helpful to Loutos, but the court is not as familiar with the factual details or disclosures in the criminal case as are the parties. Perhaps there is some inconsistency between the SEC's recitation of facts and the criminal accusations or other evidence that would be helpful to Loutos, or, more of a possibility, the other criminal defendants, though even that is highly doubtful given that the government has an open file policy in the prosecution.

The court previously required that the prosecution "file a statement describing its relationship with the SEC regarding this prosecution and expressly stating whether the SEC or any SEC employee is part of the prosecution team in this case." Order dated May 28, 2002 [Docket Entry 99]. The prosecution thereafter filed a statement, which the court takes as true. See Govt. Statement Pursuant to May 28, 2002 Court Order [Docket Entry 100]. The SEC civil investigation and lawsuit has been conducted separately from the criminal investigation and prosecution. The SEC made its own independent decision to file the Civil Action

and the prosecution made its own independent decision to indict. However, there has been cooperation between the two teams, including permitting the prosecution access to the SEC investigative file. SEC investigative files in the prosecution's possession have been made available to the criminal defendants, with the recently obtained Action Memorandum apparently being the only exception. One member of the prosecution team is an SEC attorney on special assignment, but he is from the SEC's Chicago office and did not participate in the investigation or litigation of the Civil Action which was conducted by the SEC's Fort Worth office.

Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure require that the prosecution, upon request, provide "documents" within the prosecution's "possession, custody or control . . . which are material to the preparation of the defendant's defense." To be discoverable under Rule 16, the document must be material. Rule 16 materiality has been defined as evidence that would "enable the accused to substantially alter the quantum of proof in his favor." United States v. Orzechowski, 547 F.2d 978, 984 (7th Cir. 1976), cert. denied, 431 U.S. 906 (1977) (quoting United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir. 1976)). See also United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998); United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993); United States v. Holloway, 971 F.2d 675, 679 (11th Cir. 1992), cert. denied, 507 U.S. 962 (1993); Charles Alan Wright, Federal Practice & Procedure § 254

at 107-09 & nn.19&22 (3d ed. 2000). The Seventh Circuit has also described materiality as evidence that would "significantly help[] in 'uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal.'" United States v. Gaddis, 877 F.2d 605, 611 (7th Cir. 1989) (quoting United States v. Felt, 491 F. Supp. 179, 186 (D.D.C. 1979)). Under some circumstances, even inculpatory materials may alter the proof in the defendant's favor by helping to prepare a defense or investigation. Marshall, 132 F.3d at 68; Wright, § 254 at 109.

As previously stated, it is not clear that the facts recited in the Action Memorandum would be helpful to any of the defendants in preparing a defense. Although the pending motion is brought by Loutos, it cannot be ignored that the Action Memorandum is also potentially discoverable by the other defendants, for whom the Action Memorandum generally is inculpatory. Loutos contends the Action Memorandum would be helpful to him in that he would be entitled to present the Action Memorandum at trial as evidence of his innocence.

At the status hearing on September 11, 2002, Loutos's attorney indicated that he expected that the Action Memorandum would refer to potential witnesses, including SEC employees who worked on the investigation. The Action Memorandum does not identify by name anyone other than those who were named in the Civil Action nor does it refer to any source of information other than those named in the Civil Action. Regardless of whether the

exculpatory statement as to Loutos is admitted at trial, it is highly doubtful that any of the SEC employees would be appropriate witnesses. In any event, the list of names of the SEC employees stated in the Action Memorandum as "Persons to Contact" is non-privileged information. They are as follows: Fort Worth District Office--Harold F. Degenhardt, Spencer C. Barasch, Karen L. Cook, Douglas A. Gordimer; Central Regional Office--Daniel F. Shea, Donald M. Hoerl; Branch of Regional Office Assistance--Emily P. Gordy, Jan Batterman, Charlotte Buford. Action Memo. at ii.

Loutos contends the Action Memorandum itself (or possibly the live testimony of its author) would be admissible as expert opinion testimony under Fed. R. Evid. 702 and consistently with Fed. R. Civ. 704(b). He contends that "statements and opinions in the Memorandum that relate to Mr. Loutos' role in the alleged debenture scheme, as well as what information about the scheme he had access to, when, and what that meant to expert SEC investigators, will be admissible, even though those statements will embrace Loutos' knowledge and willfulness." Def. Memo. [Docket Entry 111] at 8. The Action Memorandum, however, contains no such opinions. All it contains is a conclusory statement, quoted in its entirety above, that no evidence of Loutos's knowledge was found. Moreover, the indictment in the criminal case does not charge Loutos with the violation of any securities statute. Loutos is charged with wire fraud and unlawful monetary transactions. That is not the SEC staff's expertise. The SEC's determination that it lacked evidence to

bring civil charges of securities violations would not be admissible as expert testimony in a criminal case.

Loutos also contends that the statement would be admissible as a party admission under Fed. R. Evid. 801(d)(2). The question as to such admissibility is whether the SEC should be considered a party in this case. Loutos contends the entire federal government is his opponent or, if not the entire government, at least those agencies that also had investigative powers over the subject matter and which shared information with the prosecution team. Contrary to Loutos's contention, the Seventh Circuit has followed the general rule that Rule 801(d)(2) does not apply as against the government. See United States v. Prevatte, 16 F.3d 767, 779 n.9 (7th Cir. 1994). While noting that some courts have found this rule inapplicable to statements by government attorneys, see United States v. Zizzo, 120 F.3d 1338, 1351 n.4 (7th Cir.), cert. denied, 522 U.S. 998 (1997), the Seventh Circuit has not indicated that it would apply that exception, see id.; United States v. Nubuor, 274 F.3d 435, 442 n.7 (7th Cir. 2001). Even if the Seventh Circuit were to apply the attorney exception, it is believed that the exception would not apply in criminal cases to statements of attorneys outside the Justice Department, who are not members of the prosecution team, and who made the statements in a separate and distinct civil proceeding. The Loutos exculpatory statement in the Action Memorandum would not be admissible at trial under Rule 801(d)(2).

Last, Loutos contends the statement would be admissible at trial pursuant to Fed. R. Evid. 803(8), which provides:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

"Rule 803(8)(C) requires that the evidence be (a) a report or statement of a public office or agency; (b) factual findings; (c) result from an investigation made pursuant to authority; and (d) not indicate lack of trustworthiness." United States ex rel. Collins v. Welborn, 49 F. Supp. 2d 597, 605 (N.D. Ill. 1999) ("Collins I"), aff'd sub nom., Bracy v. Schomig, 286 F.3d 406 (7th Cir. 2002). See also United States ex rel. Collins v. Welborn, 79 F. Supp. 2d 898, 906 n.5 (N.D. Ill. 1999), aff'd sub nom., Bracy v. Schomig, 286 F.3d 406 (7th Cir. 2002). There is no requirement that the report itself be publicly disclosed. Collins I, 49 F. Supp. 2d at 605; Redmond v. Baxley, 475 F. Supp. 1111, 1122 (E.D. Mich. 1979). It has been held that staff recommendations to a commission or agency are not admissible under Rule 803(8)(C), unless adopted by the commission or agency. See Vining v. Enterprise Financial Group, Inc.,

148 F.3d 1206, 1217 (10th Cir. 1998); Smith v. Isuzu Motors Ltd., 137 F.3d 859, 862-63 (5th Cir. 1998), cert. denied, 525 U.S. 1142 (1999); Michael H. Graham, Federal Practice & Procedure § 7049 at 489 n.21 (interim ed. 2000). That is not a problem in the present situation because the SEC followed the recommendations as to who would be named in the Civil Action. The requirement that the Rule be limited to factual findings, still includes conclusions and opinions as to the facts found, as long as they are based on a factual investigation and do not lack trustworthiness. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169-70 (1988); United States v. Romo, 914 F.2d 889, 896 (7th Cir. 1990), cert. denied, 498 U.S. 1122 (1991); Chesler v. Trinity Industries, Inc., 2002 WL 1822918 *2 (N.D. Ill. Aug. 8, 2002); Klein v. Vanek, 86 F. Supp. 2d 812, 819-20 (N.D. Ill. 2000).

The prosecution concedes that the SEC is an agency authorized by law to investigate the subject matter of the Action Memorandum. It contends, however, that the Action Memorandum does not qualify as a report of factual findings because it is a legal memorandum containing legal opinions. Regardless of any legal issues that may be discussed in the Memorandum, however, the statement that Loutos seeks to use is a factual conclusion: there being "no evidence that [Loutos] knowingly participated in, or was aware of, the scheme to defraud investors." The three requirements of an (a) agency report of (b) factual findings

(c) resulting from an investigation pursuant to authority are satisfied. Since these requirements are met, the report is presumed to be trustworthy and the burden is on the prosecution to show that it is not. Collins I, 49 F. Supp. 2d at 605. The government does not make any such contention and, in any event, the report appears to be based on a thorough investigation and therefore appears to be trustworthy. On the information and arguments presently before the court, the statement in footnote 11 would be admissible if Loutos chooses to present it.

Although one sentence of the Action Memorandum would be admissible, that is not a basis for requiring that the Action Memorandum be provided to the defendants. The prosecution has already disclosed to Loutos the exculpatory information that is useful to him, as well as the one other reference to him contained in the Memorandum. It is undisputed that the statement is part of a staff investigation by the SEC. The remainder of the report is not pertinent to this statement and is not needed to place the statement in context.

As to four of the other defendants, the Action Memorandum finds that they engaged in unlawful activity. The Action Memorandum does not contain exculpatory statements that these defendants might attempt to put in evidence against the government as admissible under Rule 803(8). Paladino's situation is different; he was recommended to be and was actually named as a relief defendant in the Civil Action. The Action Memorandum

does not contain any finding as to Paladino engaging in conduct
that violated the securities law. Instead, it refers to money
and a car that he received from investor funds, Action Memo. at
3, 7. It also mentions that he was an officer of PBF Capital
Group, Inc. ("PBF") and a signatory on at least one of PBF's bank
accounts. Id. at 3. PBF is described as a corporation
controlled by Benson and which received almost $4,000,000 from a
Lennox account. Id. Although the Action Memorandum recommends
that Paladino be named only as a relief defendant who has assets
derived from investor funds, there is no statement that Paladino
lacked knowledge of the scheme. Unlike Loutos, there is no
statement that Paladino could attempt to present as evidence of
his not being guilty of the charges in the criminal case.

That the Action Memorandum is not itself admissible
evidence, except as to the one statement about Loutos, does not
preclude the possibility that it is otherwise material and
therefore must be disclosed under Rule 16. It is still possible
that it is material because it would "significantly help[] in
'uncovering admissible evidence, aiding witness preparation,
corroborating testimony, or assisting impeachment and rebuttal.'"
Gaddis, 877 F.2d at 611 (quoting Felt, 491 F. Supp. at 186). As
previously indicated, lacking detailed information about the
evidence in this case, this is a difficult determination to make.
It may very well be that the Action Memorandum is fully
consistent with information and evidence otherwise known to

defendants and/or alleged in the criminal indictment or Civil Action complaint. Given the factual detail in the Action Memorandum, though, there is a possibility that it will be helpful to the defense of one or more defendants. Also, defendants should be accorded the benefit of the doubt since they are limited in the materiality arguments they can make without first seeing the document. It seems particularly appropriate to resolve such doubt in defendants' favor because the prosecution's response to Loutos's motion contains no express representation to the contrary. The government primarily contends that the Action Memorandum is not subject to disclosure because it is privileged. It is found that the Action Memorandum is material and therefore ordinarily subject to disclosure under Rule 16(a)(1)(C).

Still, the Action Memorandum is not subject to disclosure under Rule 16 if it falls within an exception, see Fed. R. Crim. P. 16(a)(2), or is privileged, see United States v. Edelin, 128 F. Supp. 2d 23, 39 (D.D.C. 2001); United States v. Furrow, 100 F. Supp. 2d 1170, 1174 (C.D. Cal. 2000).

The prosecution contends that, consistent with Loutos's contention that the SEC is part of the prosecution team, the Action Memorandum is not disclosable under Fed. R. Crim. P. 16(a)(2). The court, however, has accepted the prosecution's representation that the SEC attorneys who worked on the Civil Action and the SEC as an agency are not part of the prosecution team. Therefore, the exception contained in Rule 16(a)(2) does

not apply.  Instead, the prosecution must rely on the privileges
it has invoked.

The prosecution contends the Action Memorandum is
protected from disclosure by the Attorney-Client privilege.  It
has been held that enforcement recommendations from legal staff
to the SEC are protected by the attorney-client privilege.  See
SEC v. World-Wide Coin Investments, Ltd., 92 F.R.D. 65, 66-67
(N.D. Ga. 1981); Feshbach v. SEC, 5 F. Supp. 2d 774, 784 (N.D.
Cal. 1997).

Loutos raises various grounds why the attorney-client
privilege should not be applied in this situation.  First, he
contends that the privilege does not apply to a communication
with a government attorney when the information is being
requested for a criminal case, citing In re Witness Before
Special Grand Jury 2000-2, 288 F.3d 289, 293-94 (7th Cir. 2002),
and In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910 (8th
Cir.), cert. denied, 521 U.S. 1105 (1997).  See also In re
Lindsey, 158 F.3d 1263, 1270-78 (D.C. Cir.), cert. denied, 525
U.S. 996 (1998).  These cases are distinguishable.  In all of
these cases, the question was whether a government attorney's
advice to an officeholder was privileged as against a grand jury
subpoena in a criminal investigation of government officials.  It
was noted by the Seventh Circuit that the client was the
government office itself, not the individual officials that were
under investigation.  Special Grand Jury, 288 F.3d at 293-94.

Neither the Seventh Circuit nor the other circuits held that the attorney-client privilege between an agency and its attorney had no application in any criminal case, only that it did not apply to grand jury subpoenas in cases involving possible criminal wrongdoing by a government official. That is not the situation in the present case.

Special Grand Jury does not hold and it is not expected that the Seventh Circuit would hold that the attorney-client privilege for a government agency has absolutely no application in a criminal case. See Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5475 at 128 (1986); id. at 41 n.26 (2002 Supp.); Lindsey, 158 F.3d at 1268-70. At most, it would be expected to hold that the privilege is not absolute in a criminal case and considerations of the requesting party's need for the information and the agency's need for confidentiality could be considered. Cf. Special Grand Jury, 288 F.3d at 192 (citing Lindsey, 158 F.3d at 1283 (Tatel, J., dissenting); Duces Tecum, 112 F.3d at 935-38 (Kopf, J., dissenting)). Here, as previously indicated, it does not appear that the Action Memorandum would be very helpful to defendants. Many of the facts recited therein are also alleged in the indictment and likely were also alleged in the Civil Action complaint. On the other hand, the Action Memorandum does not contain any equivocal or novel legal or factual discussion that particularly calls for keeping it confidential. It does not indicate that any of the

facts are in doubt or will be difficult to prove and the legal discussion is largely a formulaic statement that the facts constitute a violation of the securities laws. There is no indication that any legal position to be taken in the case has possible weaknesses. Moreover, the Civil Action is no longer pending and therefore the defendants in the Civil Action would not get an undue benefit from disclosure at this time. Still, the likely limited value to the defendants would not call for overriding the attorney-client privilege in this case.

Loutos also contends that only the SEC itself may invoke the privilege, not the prosecution in this case. However, as a convenience to the parties and the court, the prosecution team inquired as to whether the Action Memorandum existed and has provided an <u>in camera</u> copy as a courtesy to avoid the need for further litigation over an SEC subpoena. Moreover, when before the court, the SEC argued in the alternative that the privilege would apply if a document responsive to Loutos's subpoena were to be found. <u>See</u> SEC Motion to Quash Subpoenas Duces Tecum [Docket Entry 66] at 12; <u>Peitz II</u>, 2002 WL 453601 at *2. Loutos contends the SEC should be estopped from invoking the privilege because of its failure to initially reveal the document's existence. There is no basis for finding a deliberate attempt to hide the document. Under the present circumstances, the prosecution will not be precluded from arguing privileges on the SEC's behalf.

Additionally, Loutos contends the privilege has been waived because the SEC's lead attorney in the Civil Action previously disclosed to Loutos's counsel that a document likely existed in which a determination of Loutos's nonliability was stated. As Loutos has repeatedly argued in court, it is standard SEC procedure to have an Action Memorandum or similar document prior to bringing a civil action and it would be expected that the document would address why other potential defendants should not be named in the civil action. The SEC lead attorney was not revealing any great secret by indicating that such a document definitely or probably was created related to Loutos being a defendant in the Civil Action. There is no contention that the lead attorney provided a detailed description of the contents of the Action Memorandum and any statement that Loutos was determined not to be liable revealed nothing in that such a determination was likely to have existed given that Loutos had not been named in the Civil Action. The minimal information provided by the lead attorney did not waive any privilege. Cf. United States v. Zuckerman, 88 F. Supp. 2d 9, 15 (E.D.N.Y. 2000).

Loutos also contends that Brady v. Maryland, 373 U.S. 83 (1963), and its progeny require that the Action Memorandum be disclosed, even if it is otherwise protected by the attorney-client privilege. The prosecution "'is obligated to disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case,' with doubt as

to usefulness resolved in favor of disclosure." <u>Peitz I</u>, 2002 WL 22685 at *3 (quoting <u>United States v. Sudikoff</u>, 36 F. Supp. 2d 1196, 1199 (C.D. Cal. 1999)). The exculpatory statement as to Loutos, however, is the only passage in the Action Memorandum that is found to be <u>Brady</u> material and it has already been disclosed. Moreover, the prosecution is only obliged to disclose evidence that would be useful and favorable, not necessarily the privileged document itself. The prosecution is under an obligation to read the Action Memorandum and disclose to defendants any additional information that points to evidence favorable to any defendant. It is not obligated to disclose the document itself except those portions that are favorable to defendants and admissible under Fed. R. Evid. 803(8).

Because the Action Memorandum is protected from disclosure by the Attorney-Client privilege and no sufficient basis is found for overriding that privilege, neither the SEC nor the prosecution team will be required to provide the Action Memorandum to defendants. The SEC and the prosecution team, however, may consider whether they will voluntarily provide the Action Memorandum to defendants without waiving privilege as to other privileged documents.

IT IS THEREFORE ORDERED that defendant Loutos's request for production of the SEC action memorandum [111] is denied. The copy of the Action Memorandum provided <u>in camera</u> will be placed

under seal by the Clerk of the Court and filed of record for any
possible review on appeal.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED:   SEPTEMBER  *19* , 2002