# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| **CASE NUMBER** | **01 CR 852 - 3** | **DATE** | **JAN. 23, 2003** |
| **CASE TITLE** | **UNITED STATES OF AMERICA v. PETER A. LOUTOS** | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] By February 3, 2003, the government shall serve defendant and the probation officer with a copy of its version of the offense as described herein. By February 24, 2003, each side shall file a sentencing memorandum. By March 21, 2003, the probation officer shall issue a supplemental or revised presentence report. Status hearing will be held on March 26, 2003 at 11:00 a.m.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | **3** | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. **AND** | | JAN 24 2003 | |
| ✔ | Notified counsel by telephone. | | date docketed | 230 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 1/23/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| cw | courtroom deputy's initials | | mqm | |
| | | | mailing initials | |

U.S. DISTRICT COURT
CLERK
03 JAN 23 PM 5: 13
01 CR Date/time received in central Clerk's Office 852

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
        v.                         )    No. 01 CR 852-3
                                   )
PETER A. LOUTOS, SR.,              )
                                   )
                Defendant.         )

## MEMORANDUM OPINION AND ORDER

Defendant Peter Loutos pleaded guilty to one count of making a false statement on an application for the purpose of influencing a federally insured bank in violation of 18 U.S.C. §§ 1014 and 2.[1] The preliminary Sentencing Guideline calculation contained in the Plea Agreement applied U.S.S.G. § 2F1.1[2] and determined a total offense level of four and a criminal history category of I for a sentencing range of zero to six months. The Presentence Report ("PSR") that has been prepared reached the same sentencing range, but by applying Guideline 2B1.1 of the current Guidelines Manual. At the time of the plea colloquy, the court deferred acceptance of the plea. After hearing the evidence that was presented at the trial of Loutos's codefendants

---

[1]This charge and conduct will be referred to as "bank fraud."

[2]Guideline 2F1.1 is not contained in the current (Nov. 2002) Guidelines Manual. The Plea Agreement does not specify which year's Guidelines Manual was relied upon.

and having considered the PSR, submissions of the parties, and possible Guideline results, on January 23, 2003, the court accepted Loutos's plea of guilty. However, a determination of the appropriate sentencing range will only be made after considering additional facts not presently disclosed in the Plea Agreement or PSR. A final determination as to the appropriate sentencing range will not be made until after the parties have had an adequate opportunity to address the additional facts. The purpose of today's order is to (a) outline additional issues and facts that the court will consider for purposes of sentencing Loutos and (b) set forth a schedule and procedures that will provide the parties with an adequate opportunity to address the additional issues and facts. Most of the issues mentioned herein were previously indicated to the parties in the December 27, 2002 Minute Order and at the January 23, 2003 status hearing.

## I. Background

The original indictment in this case alleged:

defendants FRANK PEITZ, DANIEL BENSON, PETER LOUTOS, ROBERT PALADINO, RANDALL LAW, MONICA ILES and others, through FLP Capital, Active International[, Inc.] and Lennox [Investment Group, Ltd.], sought to and did obtain and retain funds from prospective investors and investors by offering and selling investments purportedly in the international trading of bank financial instruments. In offering and selling these investments, the defendants made and caused to be made material misrepresentations and omissions about, among other things: the risk involved in the investment; the expected return on the investment; the use of money raised from investors; and the previous investment experience

> and the criminal and regulatory background of
> those offering and selling the investment. As a
> part of the scheme, the defendants raised over
> $11,000,000 from at least 30 investors and then
> misappropriated almost all of the funds for their
> own benefit. In order to retain the use of
> investors' funds and obtain additional funds from
> new investors and to conceal various parts of
> the scheme from victim investors and others,
> defendants continued to lull investors through a
> series of misrepresentations and omissions about
> the nature and status of their investments as
> well as by repaying earlier, disgruntled
> investors with funds from new investors.

Indictment ¶ 3.

All six defendants were charged with eight substantive

counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2.

The alleged wire communications underlying these counts occurred

from October 10, 1996 through May 22, 1997.[3] Defendants Peitz,

Benson, Loutos, and Paladino were also charged with a conspiracy

in violation of 18 U.S.C. § 1956(h) under which they agreed to

(1) conduct financial transactions involving the proceeds of the

wire fraud scheme in order to promote the scheme in violation of

18 U.S.C. § 1956(a)(1)(A)(i); (2) engage in wire fraud violations

that were designed to conceal the source and ownership of

unlawful proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

and (3) engage in monetary transactions in criminally derived

property with a value greater than $10,000 in violation of

18 U.S.C. § 1957(a). The conspiracy allegedly began no later

than October 1994 and continued until at least June 1998. The

---

[3]The wire fraud scheme will be referred to as "investment
fraud."

four alleged conspirators were also charged with five substantive counts of violating 18 U.S.C. §§ 1957 and 2 and two substantive counts of violating 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

During pretrial proceedings in this case, a large volume of potential documentary evidence was made available for inspection by the defendants. As of September 11, 2002, the trial of all six defendants was set for November 4, 2002. On October 23, 2002, the government submitted its "Santiago" proffer. See United States v. Santiago, 582 F.2d 1128 (7th Cir. 1978); United States v. Centracchio, 265 F.3d 518, 522 & n.1 (7th Cir. 2001). The proffer assumed Loutos was going to trial and outlined the factual support for finding Loutos to be a member of the charged conspiracy and for admitting against him the statements of his alleged coconspirators. However, on October 30, 2002, a superseding information was filed and Loutos pleaded guilty to the one bank fraud charge contained in the information. The offense to which Loutos pleaded guilty occurred in June 1996. As had been scheduled, the trial of Loutos's codefendants began on November 4, 2002. On December 11, 2002, the jury returned a verdict of guilty as to all counts and defendants, except that they returned a verdict of not guilty as to one count (Count 13) of violating § 1957. Sentencing for the five defendants who went to trial is presently set for March 12, 2003.

## II. Opportunity To Be Heard

A defendant must be provided with an adequate opportunity
to address those issues and facts that will be considered in
determining his or her sentence.  See United States v. Jackson,
32 F.3d 1101, 1105-09 (7th Cir. 1994).

> In summary, we reiterate that Rule 32 and
> § 6A1.3 of the Guidelines require both reasonable
> advance notice, i.e., knowledge, of the ground on
> which the district court is contemplating an
> enhancement as well as a meaningful opportunity
> to challenge the issue.  The right to challenge a
> sentencing issue encompasses the right to present
> favorable evidence, including the presentation of
> witnesses when appropriate under U.S.S.G.
> § 6A1.3.  Advance notice means that prior to the
> sentencing hearing the defense must be informed
> via the PSR, the prosecutor's recommendation or
> the court that a specific sentencing enhancement
> is being contemplated, e.g., an abuse of trust
> enhancement.  When defense counsel is unaware
> until the sentencing hearing is in progress that
> the court is considering an enhancement, counsel
> is denied an opportunity to prepare and call
> witnesses, as allowed under U.S.S.G. § 6A1.3,
> much less to present evidence on disputed facts.
> Moreover, he is not permitted adequate time to
> prepare case law challenging the adequacy of the
> Guideline factor as it applies to the factual
> circumstances at hand.

Id. at 1108-09.

Today's order will set forth pertinent issues that will
be considered at the time of sentencing.[4]  Today's order also

---

[4]In a minute order dated December 27, 2002, the court
summarily set forth some issues for the parties to address.  The
government's one-paragraph filing failed to address any of the
issues set forth in the minute order.  Defendant's January 15,
2003 Memorandum addressed some, but not all, of the pertinent
issues.  Some potential issues were also discussed at the
January 23, 2003 status hearing.  Today's order will ensure that

outlines additional facts and evidence that will be considered at the time of sentencing. Further, the government will be required to provide Loutos and the probation officer[5] with a copy of the government version of the offense that has been prepared for the sentencing of the other five defendants, as well as a supplemental statement regarding Loutos. In accordance with the schedule set forth in § IX below, the parties will be provided the opportunity to submit sentencing memoranda addressing the issues.

In his January 15, 2003 Memorandum ("January 15 Memorandum"), Loutos pointed out that the government had not contended there is any relevant conduct nor does the PSR recite any and, further, "defendant, not having been present or represented at the trial and with no discovery on this issue, is not aware of what specific facts the Court intends to consider concerning any alleged relevant conduct." That statement is somewhat disingenuous. Although Loutos did not attend the trial of his codefendants, Loutos was actively involved in preparing for trial until shortly before his codefendants went to trial. Loutos had access to and took the opportunity to examine the voluminous amount of documents that were made available in pretrial proceedings. He also received the government's Santiago

the parties are aware of the pertinent issues that need to be addressed and that they have a fair opportunity to address them.

[5]As to any further sentencing memoranda or sentence-related documents that the parties file with the court, they shall also provide a copy to the probation officer.

proffer outlining evidence of his involvement in the conspiracy. Defendant is also well aware of the wire fraud scheme that was charged in the original indictment. While defendant may not be aware of how the evidence specifically played out at trial, he is well aware of what evidence was available for trial and is well aware of the contours of the charged scheme. Moreover, while a dispute possibly exists as to the amount of loss, it is probably more likely that Loutos has little dispute as to the amount of loss that was caused by the wire fraud scheme. Instead, the likely area of dispute is Loutos's involvement in the wire fraud scheme. In any event, today's order and the procedures set forth herein provide Loutos with adequate notice of the facts and evidence at issue. Additionally, the transcript of the trial will be available prior to the date a final determination will be made as to Loutos's sentence.

### III. **Sentencing Evidence**

Facts found for purposes of applying the Sentencing Guidelines in this case must be found by a preponderance of the evidence. See United States v. Smith, 308 F.3d 726, 743-45 (7th Cir. 2002). Since any sentence that will be imposed will be below the 30-year statutory maximum applicable to violations of 18 U.S.C. § 1014, there is no Apprendi problem that requires that any additional facts be either admitted by defendant or proven before a jury. See Apprendi v. New Jersey, 530 U.S. 466 (2000); Smith, 308 F.3d at 745.

Findings for purposes of sentencing may be based on any reliable evidence, including hearsay or other evidence that would not ordinarily be admissible at trial.  United States v. Schaefer, 291 F.3d 932, 942 (7th Cir. 2002); United States v. Martinez, 289 F.3d 1023, 1028-29 (7th Cir. 2002); United States v. Polson, 285 F.3d 563, 566 (7th Cir. 2002); United States v. Chavez-Chavez, 213 F.3d 420, 422 (7th Cir. 2000).  At sentencing, the court may consider evidence that was before it in a trial, sentencing hearing, or plea of a codefendant.  United States v. Pippen, 115 F.3d 422, 425 (7th Cir. 1997); United States v. Morales, 994 F.2d 386, 389-90 (7th Cir. 1993); United States v. Hardamon, 188 F.3d 843, 850 (7th Cir. 1999) (quoting United States v. Nesbitt, 852 F.2d 1502, 1521-22 (7th Cir. 1988), cert. denied, 488 U.S. 1015 (1989)).  It is only necessary that the defendant receive sufficient notice that evidence from the other hearing will be considered and the opportunity to consider and respond to such evidence.  See Morales, 994 F.2d at 389-90. Loutos has an adequate opportunity to consider the evidence that was presented at the trial of his codefendants.  Also, to the extent any codefendant is sentenced prior to Loutos and evidence from a codefendant's sentencing hearing is to be considered, Loutos will be provided the opportunity to consider and respond to any such evidence.

## IV. Provisions of Loutos's Plea Agreement

Paragraph 17 of Loutos's Plea Agreement, which concerns restitution, states in part: "The parties stipulate and agree that there was no loss resulting from the defendant's false claim." The Plea Agreement also contains the following provisions. After reciting facts underlying the offense, it is stated: "Defendant also admits that these facts are not a complete statement of defendant's knowledge of and involvement in the charged offense." Plea Agreement ¶ 5. The government is permitted to correct errors in the Guideline calculation. Id. ¶ 7 ("Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing."). Loutos may not withdraw his plea because such a correction is made. Id. Also, the Plea Agreement provides that the government is to "fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him in this case, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing." Id. ¶ 14. Additionally, the Plea Agreement contains the standard provision that the court is not bound by the Agreement, id. ¶ 16, and that the court makes the final determination as to the appropriate Guideline determination, id. ¶ 6(e). Loutos may not withdraw his plea if the court reaches a different conclusion than the

tentative Guideline calculation contained in the Plea
Agreement.  Id.

The stipulation in ¶ 17 refers only to losses resulting
from defendant's false statement.  This stipulation should
probably be read as being limited to losses directly resulting
from the false statement bank fraud offense.  The stipulation
does not refer to any losses resulting from any possible relevant
conduct and Loutos apparently so understands the stipulation in
that his January 15 Memorandum treats relevant conduct and any
related losses as being distinct from the issue of loss
attributed to the bank fraud charge.  See Jan. 15 Memo. at 4.

Even if the stipulation contained in ¶ 17 were to be
construed broadly so as to apply to any possible losses
attributed to Loutos, the court is not precluded from considering
evidence that indicates otherwise.  Guideline 6B1.4(d), a policy
statement, provides:  "The court is not bound by the stipulation,
but may with the aid of the presentence report, determine the
facts relevant to sentencing."  See also United States v.
Williams, 198 F.3d 988, 994 (7th Cir. 1999); United States v.
Mankiewicz, 122 F.3d 399, 403 n.1 (7th Cir. 1997); United
States v. Bennett, 990 F.2d 998, 1003 (7th Cir. 1993).  The
commentary to Guideline 6B1.4 provides in part:

> . . . [I]t is not appropriate for the
> parties to stipulate to misleading or
> non-existent facts, even when both parties are
> willing to assume the existence of such "facts"
> for purposes of the litigation.  Rather, the
> parties should fully disclose the actual facts
> and then explain to the court the reasons why the
> disposition of the case should differ from that

which such facts ordinarily would require under
the guidelines.
                                  * * *

        Section 6B1.4(d) makes clear that the court
    is not obliged to accept the stipulation of the
    parties.  Even though stipulations are expected
    to be accurate and complete, the court cannot
    rely exclusively upon stipulations in
    ascertaining the factors relevant to the
    determination of sentence.  Rather, in
    determining the factual basis for the sentence,
    the court will consider the stipulation, together
    with the results of the presentence
    investigation, and any other relevant
    information.

        In the Plea Agreement, Loutos specifically admits that

facts stated therein do not constitute a complete statement of

Loutos's knowledge of and involvement in the offense.  Evidence

presented at his codefendants' trial supports that Loutos was

aware of and knowingly and intentionally participated in the

investment fraud offenses.[6]  Paragraph 14 of the Plea Agreement

expressly provides that the government is to fully apprise both

the court and probation officer of the extent of Loutos's

conduct, including any matters in aggravation pertinent to his

sentencing.  Thus, both the Guidelines, U.S.S.G. § 6B1.4;

Bennett, 990 F.2d at 1003; United States v. Telesco, 962 F.2d

165, 168 (2d Cir. 1992); United States v. Holland, 59 F. Supp. 2d

492, 532 (D. Md. 1998), and the Plea Agreement place a duty on

the government to be fully forthcoming regarding Loutos's

involvement in possible relevant conduct.  It may be that the

_____

        [6]The court is not presently making a determination as to
Loutos's knowledge and participation.  It is only being noted
that evidence was presented from which such a conclusion could
have reasonably been reached.

government believes there are weaknesses in its case against Loutos that justified dropping allegations of involvement in a $14,000,000[7] wire fraud scheme and instead enter into a Plea Agreement possibly providing for a zero-to-six-month sentencing range. However, if it so believed, the Guidelines provide that the government should disclose all pertinent facts and explain the basis for entering into the Plea Agreement. The government has not made such a representation. In all further filings, however, the government shall be fully forthcoming regarding the evidence related to Loutos. To the extent reasons exist for the nature of the Plea Agreement, the government may set forth such reasons where appropriate, but it still must also set forth those facts that may connect Loutos to the investment fraud.

## V. Relevant Conduct

As previously indicated, a key issue for Loutos's sentencing is whether the investment fraud that the jury found the codefendants were involved in constitutes relevant conduct for the bank fraud offense to which Loutos has pleaded guilty. Guideline 1B1.3(a) provides:

> (a) <u>Chapters Two (Offense Conduct) and Three (Adjustments)</u>. Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and

---

[7]At the codefendants' trial, it was indicated that this figure represented the loss to investors resulting from the investment fraud and evidence was submitted to support this contention.

(iv) adjustments in Chapter Three, shall be
determined on the basis of the following:

(1)(A) all acts and omissions committed,
aided, abetted, counseled, commanded, induced,
procured, or willfully caused by the defendant;
and

(B) in the case of a jointly undertaken
criminal activity (a criminal plan, scheme,
endeavor, or enterprise undertaken by the
defendant in concert with others, whether or not
charged as a conspiracy), all reasonably
foreseeable acts and omissions of others in
furtherance of the jointly undertaken criminal
activity, that occurred during the commission of
the offense of conviction, in preparation for
that offense, or in the course of attempting to
avoid detection or responsibility for that
offense;

(2) solely with respect to offenses of a
character for which § 3D1.2(d) would require
grouping of multiple counts, all acts and
omissions described in subdivisions (1)(A) and
(1)(B) above that were part of the same course of
conduct or common scheme or plan as the offense
of conviction;

(3) all harm that resulted from the acts and
omissions specified in subsections (a)(1) and
(a)(2) above, and all harm that was the object of
such acts and omissions; and

(4) any other information specified in the
applicable guideline.

As to subsection (a)(1)(B), Application Note 2 states:

A "jointly undertaken criminal activity" is
a criminal plan, scheme, endeavor, or enterprise
undertaken by the defendant in concert with
others, whether or not charged as a conspiracy.
In the case of a jointly undertaken criminal
activity, subsection (a)(1)(B) provides that a
defendant is accountable for the conduct (acts
and omissions) of others that was both:
(i) in furtherance of the jointly undertaken
criminal activity; and

> (ii) reasonably foreseeable in connection
> with that criminal activity.
> Because a count may be worded broadly and
> include the conduct of many participants over a
> period of time, the scope of the criminal
> activity jointly undertaken by the defendant (the
> "jointly undertaken criminal activity") is not
> necessarily the same as the scope of the entire
> conspiracy, and hence relevant conduct is not
> necessarily the same for every participant.  In
> order to determine the defendant's accountability
> for the conduct of others under subsection
> (a)(1)(B), the court must first determine the
> scope of the criminal activity the particular
> defendant agreed to jointly undertake (i.e., the
> scope of the specific conduct and objectives
> embraced by the defendant's agreement).  The
> conduct of others that was both in furtherance
> of, and reasonably foreseeable in connection
> with, the criminal activity jointly undertaken by
> the defendant is relevant conduct under this
> provision.  The conduct of others that was not in
> furtherance of the criminal activity jointly
> undertaken by the defendant, or was not
> reasonably foreseeable in connection with that
> criminal activity, is not relevant conduct under
> this provision.

Application Note 2 also specifically states:  "Note that the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical."

As to subsection (a)(2), Application Note 9 provides:

> "Common scheme or plan" and "same course of
> conduct" are two closely related concepts.
> (A) Common scheme or plan.  For two or more
> offenses to constitute part of a common scheme or
> plan, they must be substantially connected to
> each other by at least one common factor, such as
> common victims, common accomplices, common
> purpose, or similar modus operandi.  For example,
> the conduct of five defendants who together
> defrauded a group of investors by computer
> manipulations that unlawfully transferred funds

over an eighteen-month period would qualify as a
common scheme or plan on the basis of any of the
above listed factors; i.e., the commonality of
victims (the same investors were defrauded on an
ongoing basis), commonality of offenders (the
conduct constituted an ongoing conspiracy),
commonality of purpose (to defraud the group of
investors), or similarity of modus operandi (the
same or similar computer manipulations were used
to execute the scheme).
　　　(B) Same course of conduct.  Offenses that
do not qualify as part of a common scheme or plan
may nonetheless qualify as part of the same
course of conduct if they are sufficiently
connected or related to each other as to warrant
the conclusion that they are part of a single
episode, spree, or ongoing series of offenses.
Factors that are appropriate to the determination
of whether offenses are sufficiently connected or
related to each other to be considered as part of
the same course of conduct include the degree of
similarity of the offenses, the regularity
(repetitions) of the offenses, and the time
interval between the offenses.  When one of the
above factors is absent, a stronger presence of
at least one of the other factors is required.
For example, where the conduct alleged to be
relevant is relatively remote to the offense of
conviction, a stronger showing of similarity or
regularity is necessary to compensate for the
absence of temporal proximity.  The nature of the
offenses may also be a relevant consideration
(e.g., a defendant's failure to file tax returns
in three consecutive years appropriately would be
considered as part of the same course of conduct
because such returns are only required at yearly
intervals).

Under subsection (a)(1)(B), the scope of Loutos's jointly

undertaken activity must first be determined.  The second step is

then to determine which conduct of others was reasonably

foreseeable.  United States v. Thomas, 199 F.3d 950, 953-54 (7th

Cir. 1999).  Loutos's knowledge of the investment fraud is

relevant to both inquiries.  Id.  In his January 15 Memorandum,

Loutos contends there is no evidence that he had any knowledge of

or knowingly joined in the criminal acts and conspiracy of the other defendants. In his plea, Loutos has admitted that he jointly acted with Benson in making false representations when opening a Lennox bank account. The evidence shows that Lennox was a company that engaged only in false and fraudulent transactions. It is clear from the evidence presented at the codefendants' trial that the bank fraud was an integral part of the investment fraud scheme proven at that trial. Evidence presented at the codefendants' trial also supported[8] that, besides making false statements in order to open the Lennox bank account, Loutos (a) aided in representations to investors that an actual escrow account existed; (b) allowed his attorney trust account to be used to launder funds; (c) made false statements in connection with an interpleader action; (d) aided in the distribution of bank confirmations bearing the name of his law firm; (e) aided in the transfer of investor funds, e.g., the transfer of $250,000 to a London company; (f) provided letters that aided the investment scheme, e.g., the August 2, 1996 letter to Law; (g) advised potential witnesses not to cooperate with fraud investigators; and (h) obtained some of the proceeds of the investment fraud. Besides being evidence that Loutos intentionally aided and participated in the investment fraud, Loutos's involvement provided him with information about the

---

[8]Again, it is only being stated that evidence was presented from which such a finding could reasonably be made. No final determination is presently being made regarding Loutos's knowledge or participation.

codefendants' fraudulent investment activity.[9]  It could be found
from this evidence that Loutos was well aware of the fraudulent
nature of the codefendants' investment activity or that the
investment fraud of the others was reasonably foreseeable.  From
the aforementioned evidence, it could further be found that
Loutos's agreement to engage in the bank fraud was part of an
understanding that he was aiding the investment fraud as well.
Therefore, it could be found that the investment fraud by Benson
and others that followed the bank fraud was in furtherance of the
bank fraud activity in which Loutos engaged.  The evidence
presented at the codefendants' trial could support a finding,
under Guideline 1B1.3(a)(1)(B), that the investment fraud is
relevant conduct.

Alternatively, based on the evidence presented at the
codefendants' trial, it could be found by a preponderance of the
evidence that Loutos was a member of the conspiracy as charged in
Count 9 of the original indictment.  That would support a finding
that the investment fraud was relevant conduct to the bank fraud.
See United States v. Gutierrez-Herrera, 293 F.3d 373, 376 (7th
Cir. 2002); United States v. Kubick, 205 F.3d 1117, 1127-28 (9th
Cir. 1999).

To the extent the investment fraud were to be found to be
relevant conduct, the harm caused by the investment fraud would

---

[9]At least as early as July 2, 1996, Loutos received a
copy of a letter complaining that certain investor funds should
be held in the purported escrow account.  Govt. Exh. First of
America No. 68.

be part of the loss calculation in determining the offense level under the applicable Guideline.  See U.S.S.G. § 1B1.3(a)(3); Schaefer, 291 F.3d at 939.

## VI. Alternative Considerations

Two other possibilities exist for considering the investment fraud loss in determining Loutos's sentencing range. The first is whether the investment loss would still be considered to have been caused by the bank fraud.  See United States v. Seward, 272 F.3d 831, 839 (7th Cir. 2001).  If it is determined that Guideline 2B1.1 (2002) is the appropriate Guideline to apply, then the causation definitions contained in that Guideline would have to be considered.  See U.S.S.G. § 2B1.1 comment. (nn. 2(A)(i), 2(A)(iv)) (2002).

The other possibility is an upward departure in accordance with U.S.S.G. § 2F1.1 comment. (n.10(b)) (1995).  That Note provides:  "In cases in which the loss determined under (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted.  Examples may include the following:  . . . (b) false statements were made for the purpose of facilitating some other crime."  In the event that the investment fraud is not found to be relevant conduct, it will be considered whether an upward departure is appropriate under this provision. Alternatively, if it were found that there is no ex post facto problem with applying the current version of Guideline 2B1.1, then the appropriate application note to

consider regarding an upward departure from that Guideline is Application Note 15(A), including 15(A)(iv).

## VII. Possible Guidelines Calculation and Adjustments

If the investment fraud were to be found to be relevant conduct and the related loss found to be in excess of $10,000,000, the court has tentatively determined that the following adjustments would need to be considered in determining the total offense level.  This is being set forth so as to enable the parties to address possible adjustments and other Guideline issues.  As previously stated, whether or not the investment fraud is relevant conduct will not be determined until after the parties have had an adequate opportunity to address the issue.

The parties stipulated that the applicable Guideline is 2F1.1.  Ordinarily, the Guidelines in effect at the time of sentencing are to be considered.  U.S.S.G. § 1B1.11(a) (2002).  Effective November 1, 2001, Guideline 2F1.1 was deleted and instead incorporated in revised Guideline 2B1.1.  See U.S.S.G. App. C, Amend. 617 (2001).  However, the current version of Guideline 2B1.1 should not be used in the present case if it would violate the ex post facto clause of the Constitution, for example, because applying the current version produces a more detrimental result than applying the version in effect at the time of the commission of the offense.  See U.S.S.G. § 1B1.11(b)(1) (2002); Schaefer, 291 F.3d at 936 n.1; United States v. Kosmel, 272 F.3d 501, 507 (7th Cir. 2001).  In such

situations, the Guidelines Manual in effect on the date of the offense shall be applied in its entirety.  U.S.S.G. § 1B1.11(b)(2) (2002).  Because of Guideline 2B1.1's loss table, see U.S.S.G. § 2B1.1(b)(1)(K) (2002), and likely adjustment for using sophisticated means, see id. § 2B1.1(b)(8)(c), the offense level under the current Guidelines Manual would be higher than under the 1995 Guidelines Manual that was in effect when the offense was completed in June 1996.  Therefore, the 1995 Guidelines Manual will be employed in tentatively calculating Loutos's sentencing range.

Under the 1995 Guidelines Manual, the Guideline applicable to violations of 18 U.S.C. § 1014 was Guideline 2F1.1. Under that Guideline, the base offense level and possible adjustments are determined as follows.

The base offense level would be 6.  U.S.S.G. § 2F1.1(a).

The adjustment for a loss of more than $10,000,000 would be 15 levels.  U.S.S.G. § 2F1.1(b)(1).

There would be a possible enhancement of 2 levels because the offense involved more than one victim.  See U.S.S.G. § 2F1.1(b)(2)(B).  Relevant conduct is to be considered in determining whether the offense involved more than one victim. See U.S.S.G. §§ 1B1.3(a)(ii), 1B1.3(a)(3); United States v. Lindsay, 184 F.3d 1138, 1141 n.3 (10th Cir.), cert. denied, 528 U.S. 981 (1999); United States v. Shumard, 120 F.3d 339, 340 (2d Cir. 1997).

There is a possible reduction of 2 levels for Loutos being a minor participant. See U.S.S.G. § 3B1.2(b). Loutos contends he should instead get a 4-level reduction under § 3B1.2(a) because he is a minimal participant, not just a minor participant. However, there is evidence that his participation in the investment fraud went beyond helping to open the bank account and therefore was not minimal. Again, no determination is presently being made as to whether Loutos would be entitled to a 2-level reduction, 4-level reduction, or no reduction whatsoever under § 3B1.2. The issue is noted so that the parties will be prepared to address it.

There is a possible 2-level enhancement for abuse of a position of trust. See U.S.S.G. § 3B1.3. There is evidence that Loutos used his special skills or public trust as an attorney "in a manner that significantly facilitated the commission or concealment of the offense." Id. See United States v. Foster, 868 F. Supp. 213, 216-17 (E.D. Mich. 1994) (use of client trust account to launder money and aid in establishing other accounts for money laundering constituted use of special skill and also abuse of public trust); United States v. Post, 25 F.3d 599, 600-01 (8th Cir. 1994) (violated public trust by using status as attorney to shroud insurance fraud claims with appearance of regularity); United States v. Ross, 190 F.3d 446, 454 (6th Cir.), cert. denied, 528 U.S. 1033 (1999) (used special skill by providing legal assistance to drug coconspirators).

Loutos may be entitled to a 2-level or 3-level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. If it is found that the investment fraud is relevant conduct, though, Loutos may not be entitled to any adjustment for acceptance of responsibility because he has continued to deny his knowledge of and/or participation in the relevant conduct. See United States v. Hernandez, 309 F.3d 458, 462-63 (7th Cir. 2002); United States v. Booker, 248 F.3d 683, 689 (7th Cir. 2001).

In addition to addressing how these adjustments affect Loutos's possible sentencing range, the parties should consider, in light of any adjustments based on a loss amount or other grounds, a revised fine range and the possible applicability of restitution.

## VIII. Practice of Law

The parties should address the question of whether it would be appropriate to prohibit Loutos from practicing law during any term of supervised release that may be imposed. See U.S.S.G. § 5F1.5; United States v. Cutler, 58 F.3d 825, 839 (2d Cir. 1995). See also United States v. Bernal, 183 F. Supp. 2d 439 (D.P.R. 2001).

## IX. Procedures

By February 3, 2003, the government shall provide defendant and the probation officer a copy of the government version of the offense that was provided to the probation

officers for purposes of sentencing the codefendants. The government shall also provide a supplement to this version specifically setting forth any additional facts and issues concerning Loutos. By February 24, 2003, each party shall file a sentencing memorandum[10] addressing the issues outlined in today's order, including delineating any evidence that a party believes would need to be presented. By March 21, 2003, the probation officer shall provide the parties and court with a supplement to (or revised version of) the PSR. A status hearing will be held on March 26, 2003 at 11:00 a.m. At the status hearing, the parties shall be prepared to address any objections they may have to the supplemental/revised PSR and any need for a hearing on any contested factual issues.

IT IS THEREFORE ORDERED that, by February 3, 2003, the government shall serve defendant and the probation officer with a copy of its version of the offense as described herein. By February 24, 2003, each side shall file a sentencing memorandum. By March 21, 2003, the probation officer shall issue a

---

[10]A copy shall also be provided to the probation officer.

supplemental or revised presentence report.  Status hearing will

be held on March 26, 2003 at 11:00 a.m.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED:  JANUARY 23 , 2003