# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| **CASE NUMBER** | **01 CR 852 - 3** | **DATE** | **APRIL 3, 2003** |
| **CASE TITLE** | **UNITED STATES OF AMERICA v. PETER A. LOUTOS** | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Loutos's motion to vacate plea [238] is denied. The revised or supplemental PSR for Loutos is to be provided by April 16, 2003. Any objections to the revised or supplemental PSR are to be filed by April 25, 2003. Status hearing of May 14, 2003 is reset to April 30, 2003 at 11:00 a.m. Sentencing of defendant Loutos is set for May 14, 2003 at 11:30 a.m.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 3 | Document Number |
| ✓ | Notices mailed by judge's staff. | | number of notices | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | APR 4 2003 | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| cw | courtroom deputy's initials | | April 3, 2003 date mailed notice | |
| | | Date/time received in central Clerk's Office | mqm | |
| | | | mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
APR 0 4 2003

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
       v.                       )    No. 01 CR 852-3
                                )
PETER A. LOUTOS, SR.,           )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

In October 2001, an indictment was returned charging
defendant Peter Loutos with eight counts of wire fraud in
violation of 18 U.S.C. §§ 1343 and 2, one count of conspiring to
commit money laundering offenses in violation of 18 U.S.C.
§ 1956(h), and seven substantive counts of money laundering in
violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957, and 2.[1]
However, on October 30, 2002, shortly before Loutos and five
codefendants were scheduled to begin trial, a superseding
information was filed and, in accordance with a written plea
agreement, Loutos pleaded guilty to one count of making a false
statement on an application for the purpose of influencing a
federally insured bank in violation of 18 U.S.C. §§ 1014 and 2.[2]
The provisional Sentencing Guidelines calculations contained in

---

[1]The wire fraud scheme and related offenses will be
referred to as "investment fraud." For further detail of the
charges, see United States v. Loutos, 2003 WL 168627 *1-2 (N.D.
Ill. Jan. 24, 2003) ("Loutos I").

[2]This charge and conduct will be referred to as "bank
fraud."

the Plea Agreement indicated a Guideline sentencing range of 0-6 months' incarceration. At that time of the plea, the court deferred its decision to accept or reject the Plea Agreement. As had been scheduled, the trial of Loutos's codefendants began on November 4, 2002. On December 11, 2002, the jury returned a verdict of guilty as to all counts and defendants, except that they returned a verdict of not guilty as to one count of violating § 1957.

After receiving a copy of the presentence report ("PSR") which also calculated a sentencing range of 0-6 months, a minute order dated December 27, 2002 was entered requiring that the parties address some additional sentencing issues. Additionally, the January 22, 2003 sentencing date was vacated and a status hearing was instead held on January 23, 2003. At the status hearing, the court stated it was accepting the Plea Agreement. The court also informed the parties that it would issue a memorandum opinion informing the parties in greater detail as to additional sentencing issues that would need to be addressed and also setting a schedule for the parties filing memoranda and the probation officer preparing a supplemental or revised PSR. No new date was set for the actual sentencing.[3] Later that day, Loutos I was issued. Loutos I points to a number of issues that

---

[3]At a March 26, 2003 status hearing, the court indicated that, if the motion to withdraw were to be subsequently denied, sentencing of Loutos would be held on May 14, 2003 and the supplemental or revised PSR of the probation officer should be filed by April 16, 2003.

had to be considered in determining defendant's sentencing range, but leaves open the resolution of those issues. Potentially, resolution of those issues could resulting in a sentencing ranging substantially higher than the 0-6 month range contained in the initial PSR.

On February 27, 2003, Loutos filed a motion to vacate his guilty plea. Loutos raises four grounds for withdrawing his guilty plea: (1) Defendant has the absolute right to withdraw his guilty plea because the court has not actually accepted his plea in that U.S.S.G. § 6B1.1 precludes accepting the plea until after the supplemental or revised PSR has been considered. (2) Under Fed. R. Crim. P. 11, defendant was not properly advised by the court prior to pleading guilty. (3) Defendant has a fair and just reason for withdrawing the plea because of a mutual mistake of the parties as to the correct guideline calculation. (4) Defendant has a fair and just reason for withdrawing the plea because he is legally innocent of the bank fraud. Each of these grounds will be addressed in turn.

## I. ACCEPTANCE OF GUILTY PLEA

Defendant's Plea Agreement provides that, following sentencing, the government will move to dismiss the charges (investment fraud) contained in the original indictment. Plea Agreement ¶ 19. Therefore, the Plea Agreement is of the type described in current Fed. R. Crim. P. 11(c)(1)(A) (formerly 11(e)(1)(a)). Defendant contends that, in accordance with

Sentencing Guidelines 6B1.1(c) and 6B1.2(a), the court should
have deferred acceptance of the plea until after reviewing the
supplemental or revised PSR.  Defendant further contends that the
court's purported acceptance of the guilty plea was therefore
without effect and thus he is free to withdraw his plea.
Defendant's argument fails to recognize the distinction between
accepting a guilty plea and accepting a plea agreement.  <u>See</u>
<u>United States v. Hyde</u>, 520 U.S. 670, 674 (1997).

At the October 30, 2002 plea colloquy, the following was
stated:

> Court:  Now, do you understand that your
> plea of guilty here today will be on the basis of
> an offer to the court, but a presentence
> investigation will be undertaken to examine the
> plea and the background here?
> Do you understand that?
>
> Loutos:  Yes, sir.
>
> Court:  And do you understand that I am not
> going to grant or deny your request to plead
> guilty today?  I will not do that until I have
> seen the presentence investigation report.  You
> will have a chance to see it, you will have a
> chance to comment on it.
> Do you understand that?
>
> Loutos:  Yes, sir.

Oct. 30, 2002 Tr. at 9-10.

After a few questions verifying the Plea Agreement,
defendant's signature thereon, and his having read it, the court
made reference to the Sentencing Guidelines and statutory
maximums and then stated:

- 4 -

> And as this is a guideline case, the
> preliminary calculation specifies the period of
> incarceration that I believe counsel said to be
> zero to six months.
> I, again, sir, caution you that I have not
> made any such determination and will not make it
> until I have decided to accept the plea agreement
> and make the determination that it should be as
> stated in the agreement or in the presentence
> report as the case may be.
> All right, now then, has anyone forced you
> to plead guilty here today?

Id. at 11.

At the conclusion of the colloquy, immediately after

defendant admitted his guilt, the court stated:

> Since you acknowledge that you are, in fact,
> guilty as charged in the criminal information,
> and you have freely waived indictment, and you
> have had the assistance of counsel, you know your
> right to a trial, you know what the maximum
> possible punishment is, and you are voluntarily
> waiving indictment and pleading guilty, I will
> accept your waiver of indictment and your plea of
> guilty, and I will take under consideration
> whether or not to enter a judgment after I have
> seen a presentence investigation.

Id. at 14-15.

The minute order that was thereafter issued stated in

part:

> Defendant enters guilty plea to Count 1 of the
> superseding information. Defendant informed of
> rights. Court defers its acceptance or rejection
> of the plea agreement as stated in open court.

Order dated Oct. 30, 2002 (Docket Entry 154).

At the January 23, 2003 status hearing, which was after

receiving the PSR, the court stated near the beginning of the

hearing that it would accept the Plea Agreement and proceed from that point forward on the basis of the plea of guilty to the bank fraud charge. The minute order that was thereafter issued stated in part: "Hearing held. Court accepts the plea agreement. Judgment of guilty entered on Count 1 of the superseding information." Order dated Jan. 23, 2003 (Docket Entry 231). In Loutos I, which was issued the same day, it was stated: "After hearing the evidence that was presented at the trial of Loutos's codefendants and having considered the PSR, submissions of the parties, and possible Guideline results, on January 23, 2003, the court accepted Loutos's plea of guilty. However, a determination of the appropriate sentencing range will only be made after considering additional facts not presently disclosed in the Plea Agreement or PSR." 2003 WL 168627 at *1.

First, it should be recognized that the Federal Rules of Criminal Procedure, including Rules 11 and 32, were amended effective December 1, 2002.[4] The 2001 Rules were in effect when defendant pleaded guilty in October 2002. The 2002 Rules are presently in effect and were in effect as of the January 23, 2003 status hearing and ruling and when defendant filed his motion to withdraw his plea. In the 2001 Rules, Rules 11(c), 11(d), and 11(f) applied to accepting a guilty plea, whereas Rule 11(e)

---

[4]The version prior to amendment will be referred to as the "2001 Rules," "2001 version," or by including "(2001)" in the citation. The version after the amendment will be referred to as the "2002 Rules," "2002 version," or by including "(2002)" in the citation.

applied to accepting or rejecting a plea agreement. In the 2002 Rules, Rule 11(b) applies to accepting a guilty plea and Rule 11(c) applies to accepting or rejecting a plea agreement. In the 2001 Rules, Rule 32(e) applied to withdrawal of a guilty plea. Under the 2002 Rules, procedures for withdrawing a guilty plea are now codified as Rules 11(d) and 11(e).

The 2002 version of Rule 11(b) provides for essentially the same plea acceptance procedure as under the 2001 Rules, but does modify the list of and stylistic description of issues on which the defendant is to be advised and questioned. For example, whereas Rule 11(c)(1) (2001) (emphasis added) referred to advising the defendant as to "the maximum possible penalty provided by law, including <u>the effect</u> of any . . . supervised release term," Rule 11(b)(1)(H) (2002) provides that the defendant should be advised as to "any maximum possible penalty, including . . . term of supervised release." <u>See also</u> Advisory Committee Notes for 2002 Amendments to Fed. R. Crim. P. 11, 2d & 3d ¶¶ (hereinafter "2002 Committee Notes").

As to the procedure for accepting or rejecting a plea agreement, the 2002 version of Rule 11(c) has no substantive changes applicable to this case[5] and was not intended to change the practice for accepting plea agreements. However, the amendments do attempt to make clear the distinction and interplay

---

[5]Rule 11(c)(1)(A) (2002) includes a new provision expressly covering promises not to bring additional charges. Such a promise is not contained in Loutos's Plea Agreement.

between considering, accepting, and rejecting a guilty plea and a plea agreement.

> Amended Rules 11(c)(3) to (5) address the topics of consideration, acceptance, and rejection of a plea agreement. The amendments are not intended to make any change in practice. The topics are discussed separately because in the past there has been some question about the possible interplay between the court's consideration of the guilty plea in conjunction with a plea agreement and sentencing and the ability of the defendant to withdraw a plea. <u>See United States v. Hyde</u>, 520 U.S. 670 (1997) (holding that plea and plea agreement need not be accepted or rejected as a single unit; "guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time."). Similarly, the Committee decided to more clearly spell out in Rule 11(d) and 11(e) the ability of the defendant to withdraw a plea. <u>See</u> <u>United States v. Hyde</u>, <u>supra</u>.

2002 Committee Notes, 6th ¶.

Rule 11(d) (2002) now clarifies when and on what basis a plea of guilty may be withdrawn, recognizing the distinction between accepting a guilty plea and accepting a plea agreement. Formerly, Rule 32(e) (2001) provided in part:

> If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason.

Rule 11(e)(4) (2001) had provisions requiring the court to advise the defendant of the opportunity to withdraw a guilty plea in the event a plea agreement is rejected.

Although not expressly stated in the Rule, the Seventh
Circuit has held that Rule 32(e) (2001) permitted defendants to
withdraw a guilty plea of right, without the need of showing a
fair and just reason, if the court had not yet accepted the
guilty plea. <u>United States v. Shaker</u>, 279 F.3d 494, 497 (7th
Cir. 2002); <u>United States v. Merriweather</u>, 294 F.3d 930, 931 (7th
Cir. 2002).[6] Some of the other circuits have held otherwise
regarding Rule 32(e) (2001). <u>See</u> <u>Shaker</u>, 279 F.3d at 497
("Indeed, the Fifth, Sixth, and Eighth Circuits have concluded
that acceptance [of the plea] is largely irrelevant and that Rule
32 applies whenever the district court has conducted a thorough
Rule 11 colloquy--even if the court defers acceptance."). In
contrast, where the guilty plea had been accepted, but the
district court had not yet determined whether to accept the Rule
11(e)(1)(A) (2001) plea agreement, the Supreme Court held that
the defendant was required to satisfy Rule 32(e) (2001)'s "fair
and just reason" standard in order to withdraw his guilty plea.
<u>Hyde</u>, 520 U.S. at 671-80. <u>See also</u> <u>United States v. Tyndale</u>, 209
F.3d 1292, 1296 (11th Cir. 2000). <u>Compare also</u> <u>United States v.</u>

---

[6]In <u>Shaker</u>, the district court found the defendant's plea
to be knowing, voluntary, and supported by a sufficient factual
basis, but then stated: "I am deferring my decision on
acceptance or rejection of your plea of guilty and your Plea
Agreement until after I've had an opportunity to study the
Presentence Report. If your plea of guilty and your Plea
Agreement are then accepted, I will so advise you." <u>See id.</u>
at 495-96. In <u>Merriweather</u>, 294 F.3d at 931, the Seventh Circuit
states that "[t]he district court reserved accepting the plea
until the pre-sentence report was prepared."

Standiford, 148 F.3d 864, 867-68 (7th Cir. 1998) (where guilty plea has been accepted, but acceptance of plea agreement is reserved, defendant's motion to withdraw from the plea agreement itself, but not withdraw the guilty plea, still required satisfaction of Rule 32(e) (2001)'s "fair and just reason" standard).

Rule 11(d) (2002) now expressly provides that a guilty plea may be withdrawn of right prior to the plea itself being accepted by the court:

> A defendant may withdraw a plea of guilty or
> nolo contendere:
>> (1) before the court accepts the plea,
> for any reason or no reason; or
>> (2) after the court accepts the plea,
> but before it imposes sentence if:
>>> (A) the court rejects a plea
>> agreement under Rule 11(c)(5); or
>>> (B) the defendant can show a fair
>> and just reason for requesting the
>> withdrawal.

Rule 11(d) (2002) also acknowledges that accepting the guilty plea is distinct from accepting the plea agreement in that Rule 11(d)(2)(A) (2002) refers to a situation where the plea has been accepted but the plea agreement is rejected.

Since Loutos's motion to withdraw was filed in February 2003, Rule 11(d) (2002) applies. However, as regards the issue presently being considered, Rule 11(d) (2002) is no different from Rule 32(e) (2001). Just as Hyde, supra, held regarding Rule 32(e) (2001), Loutos is not entitled to withdraw his guilty plea of right ("for any reason or no reason") under Rule 11(d)(1)

- 10 -

(2002) simply because his Plea Agreement has not yet been accepted. Loutos is only entitled to withdraw his guilty plea pursuant to Rule 11(d)(1) if the guilty plea itself had not already been accepted. Additionally, nothing changed between Rule 32(e)(2001) and Rule 11(d) & (e)(2002) that would affect the holding of Standiford, supra. Thus, withdrawal from the Plea Agreement itself also would not be permitted simply because the Plea Agreement itself had not yet been accepted where the guilty plea had already been accepted.

Sentencing Guideline 6B1.1(c),[7] the Policy Statement upon which Loutos relies, provides: "The court shall defer . . . the court's decision to accept or reject any plea agreement pursuant to Rule[ ] 11(e)(1)(A) . . . until there has been an opportunity to consider the presentence report, unless a report is not required . . . ."[8] Although the Plea Agreement was not accepted until January 23, 2003, after consideration of the PSR, Loutos contends the court has not complied with Guideline 6B1.1(c)

_____

[7]This Guideline has not been amended since first implemented in November 1987. The latest Guidelines Manual is from November 1, 2002 and therefore cites to the Federal Rules of Criminal Procedure in effect prior to the December 1, 2002 amendments to the Criminal Rules.

[8]Unlike the mandatory "shall defer" language in the Policy Statement, Rule 11(c)(3)(A)(2002), like Rule 11(e)(2)(2001), provides that the court "may . . . defer" acceptance of the plea until after there has been an opportunity to review the PSR. The Seventh Circuit has indicated that the mandatory language of the Guideline controls. See United States v. Ritsema, 89 F.3d 392, 397-98 (7th Cir. 1996); Standiford, 148 F.3d at 867.

because the Plea Agreement was accepted prior to also considering the supplemental or revised PSR that Loutos I required be submitted.

It need not presently be decided whether the court failed to fully comply with Guideline 6B1.1(c) in accepting the Plea Agreement nor whether any violation of that Guideline would cause the stated acceptance of the Plea Agreement to be without effect. Even assuming the acceptance of the Plea Agreement was without effect,[9] defendant would not have the right to withdraw his guilty plea under Rule 11(d)(1) (2002) because the acceptance of defendant's plea of guilty would still be in place.

At one point during the October 30 plea colloquy, the court indicated it would not be granting or denying the "request to plead guilty today." Oct. 30, 2002 Tr. at 10. Viewed in the context of the immediately preceding question, id. at 9-10, as well as the questions that followed, this statement should be understood as referring to the request to plead guilty in accordance with the terms of the Plea Agreement; that is, it is

_____

[9]No opinion is presently expressed regarding whether the acceptance of the Plea Agreement, which occurred after examination of the initial PSR, is without effect. Neither is any opinion expressed regarding whether, even if the Plea Agreement has effectively been accepted, the court still retains discretion to reject it after considering the supplemental or revised PSR and making a determination as to the appropriate sentencing range. See Ritsema, 89 F.3d at 399-400 & nn.6-7. If the court subsequently determines the Plea Agreement should be rejected and that it still has authority to reject it, in accordance with Rules 11(c)(5) and 11(d)(2)(A) (2002), the court will so inform the parties and provide defendant the opportunity to withdraw his guilty plea.

actually a reference to accepting the Plea Agreement, not a
reference to accepting the guilty plea itself. But even if the
statement could be construed as indicating the court was
contemplating deferring acceptance of the guilty plea itself, the
court did not thereafter defer acceptance of the guilty plea.
After defendant's admission of guilt, the court expressly stated
it was accepting the plea of guilty. Id. at 15. Additionally,
the court issued an order stating the plea of guilty was entered
and stating the acceptance or rejection of the Plea Agreement was
deferred. On October 30, 2002, the court accepted defendant's
plea of guilty. Moreover, on January 23, 2003, which was still
prior to defendant's motion to withdraw his guilty plea, the
court stated both at the status hearing and in the accompanying
minute order that it accepted the Plea Agreement and also stated
in the minute order that a judgment of guilty was entered. In
the Memorandum Opinion issued that same day, the court reiterated
that it had accepted the guilty plea itself. Loutos I, 2003 WL
168627 at *1.

It is clear that, prior to the February 27, 2003 motion
to withdraw his plea, defendant's plea of guilty had been
accepted. Therefore, for the reasons previously discussed,
defendant does not have the right to withdraw his plea under Rule
11(d)(1) (2002). Instead, Rule 11(d)(2)(B) (2002) applies to
defendant's motion to withdraw his guilty plea, which requires

- 13 -

that he have "a fair and just reason for requesting the
withdrawal."

## II.   WITHDRAWAL OF GUILTY PLEA

Rule 11(D)(2)(B) (2002), as had Rule 32(e) (2001),
provides that a defendant may withdraw a guilty plea on a showing
of a "fair and just reason."  This "is not a free-swinging
backdoor," <u>United States v. Hodges</u>, 259 F.3d 655, 660 (7th Cir.
2001).  A defendant does not have an absolute right to withdraw a
guilty plea.  <u>United States v. Wallace</u>, 276 F.3d 360, 366 (7th
Cir.), <u>cert. denied</u>, 122 S. Ct. 2592 (2002).  Instead, he or she
must bear a heavy burden of persuasion.  <u>United States v.
Underwood</u>, 174 F.3d 850, 852 (7th Cir. 1999); <u>Standiford</u>, 148
F.3d at 868-69; <u>United States v. Jones</u>, 87 F.3d 954, 955 (7th
Cir. 1996); <u>United States v. Rinaldi</u>, ___ F. Supp. 2d ___, ___,
2003 WL 554541 *2 (C.D. Ill. Feb. 27, 2003).  After a knowing and
voluntary Rule 11 colloquy, the defendant faces an uphill battle
in demonstrating a fair and just reason.  <u>Hodges</u>, 259 F.3d
at 660; <u>United States v. Pike</u>, 211 F.3d 385, 390 (7th Cir. 2000);
<u>United States v. Schilling</u>, 142 F.3d 388, 398 (7th Cir. 1998);
<u>United States v. Messino</u>, 55 F.3d 1241, 1248 (7th Cir. 1995).

## A.   Adequacy of the Rule 11 Inquiry

Loutos contends he is entitled to withdraw his plea
because, during the Rule 11 colloquy, he was not sufficiently

advised as to all the factors listed in Rule 11(c) (2001).[10]  He
contends he was not adequately advised regarding (1) his waiver
of the right to appeal or collaterally attack the sentence, see
Fed. R. Crim. P. 11(c)(6) (2001); (2) that the court can depart
from guidelines and may order restitution, see id. 11(c)(1);
(3) the effect of any supervised release term, see id.; (4) his
right to counsel at trial, see id. 11(c)(3) (2001); and (5) that
he could not be compelled to testify against himself, see id.
Loutos also contends that he should have been advised that, if
the court did not accept the Rule 11(e)(1)(B) (2001) sentencing
recommendation contained in the Plea Agreement, he would not be
entitled to withdraw his plea.  See id. 11(e)(2).  There is no
express contention that failure to advise defendant as to any of
these issues resulted in his plea being involuntary or even
unknowing.  Neither is there any express contention that, had he
been expressly advised regarding these issues, he would not have
pleaded guilty.

     "The whole point of the Rule 11 colloquy is to establish
that a plea was knowingly and voluntarily made." United
States v. Williams, 184 F.3d 666, 670 (7th Cir. 1999) (quoting
Standiford, 148 F.3d at 868).  See also Fed. R. Crim P. 11(c),
11(d) (2001); Fed. R. Crim. P. 11(b)(1), 11(b)(2) (2002).

            . . . In determining whether the defendant's
            plea was voluntary, we conclude whether,

_____

          [10]The plea colloquy itself occurred before the
December 1, 2002 amendments to Rule 11.

after "looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." United States v. Wagner, 996 F.2d 906, 912 (7th Cir. 1993). "The Supreme Court has cautioned that, in reviewing Rule 11 proceedings, '[m]atters of reality, and not mere ritual, should be controlling.'" United States v. Richardson, 121 F.3d 1051, 1057 (7th Cir. 1997) (quoting McCarthy v. United States, 394 U.S. 459, 467-68 n.20, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)) (internal quotations and citation omitted). "In other words, courts 'must strike a balance between a "crabbed interpretation" that exults form over substance, and an overly technical review which sets "a procedural trap for the government."'" Id. (quoting United States v. Saenz, 969 F.2d 294, 296 (7th Cir. 1992) (citation omitted)) (emphasis added).
. . . The Rule 11 hearing need not provide the defendant with a "detailed course on criminal procedure:

> We have never required strict adherence to the strictures [of Rule 11]; rather, the focus is whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights. We have not and do not intend to mandate a specific format or dialogue to be followed in a Rule 11 hearing. If the defendant is fully apprised of his rights and the consequences of his actions, and he knowingly and voluntarily enters into the entire contents of the plea agreement, the hearing is proper."

[United States v.] Ranum, [96 F.3d 1020,] 1024 [(7th Cir. 1996)] (citing United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995) (citations and quotations omitted)).

United States v. Elkins, 176 F.3d 1016, 1021 (7th Cir. 1999).

Thus, when a defendant moves to withdraw his or her guilty plea based on failure to satisfy the advice requirements

of Rule 11, the focus is on whether the guilty plea was knowing

and voluntary.  See Standiford, 148 F.3d at 868.

> Accordingly, "in a Rule 32 proceeding, when the
> court is asked to reevaluate the defendant's
> intent at the time of the entry of a plea, that
> reviewing court's ultimate determination of the
> defendant's state of mind depends, in large part,
> on what defendant said during the Rule 11
> colloquy."  [United States v. Ellison, 835 F.2d
> 687, 693 (7th Cir. 1987).]  Moreover, the record
> that is created at a Rule 11 hearing is accorded
> a "presumption of verity."  United States v.
> Trussel, 961 F.2d 685, 689 (7th Cir. 1992).
> Thus, a defendant who files a motion to withdraw
> his plea on the ground that his plea was not
> knowing and voluntary, contrary to his assertions
> at the Rule 11 proceeding, faces a heavy burden
> of persuasion.  See Ellison, 835 F.2d at 693.
> "'The district court is generally justified in
> discrediting the proffered reasons for the motion
> to withdraw and holding the defendant to [his]
> admissions at the Rule 11 hearing."'  United
> States v. Messino, 55 F.3d 1241, 1248 (7th Cir.
> 1995) (quoting United States v. Groll, 992 F.2d
> 755, 758 (7th Cir. 1993)).

Standiford, 148 F.3d at 868-69.

In considering the circumstances surrounding the plea,

the background of the defendant may be considered.  See United

States v. Hauptman, 111 F.3d 48, 51 (7th Cir. 1997).  As was

revealed during the plea colloquy, Loutos was 70 years old,

graduated from law school in 1964, and also had an undergraduate

degree in pharmacy.  Oct. 30, 2002 Tr. at 5.  As had been

disclosed during prior proceedings in this case (including during

hearings on motions to travel outside the jurisdiction),[11] Loutos

---

[11]In determining whether a plea was knowing and
voluntary, the court is not limited to considering only the plea

was still a practicing attorney. Loutos should be considered to have a substantial level of sophistication, cf. Hauptman, 111 F.3d at 51, including some familiarity with legal and court proceedings. Though there was no indication that his legal experience included working on criminal matters, Loutos may be presumed to be familiar with contracts and the need to carefully read documents that are contractual in nature and signed by the party.

Except as to those issues he notes, defendant does not dispute that, during the plea colloquy, he was fully and adequately advised as to all other issues set forth in Rule 11(c) (2001). This included being advised as to the nature of the charges, maximum penalties, a right to counsel, the right to plead not guilty, the right to trial, the right to trial by a jury, and the right to confront and cross examine witnesses. Defendant was also advised as to additional issues that are not specifically included in Rule 11(c) (2001). Further, an adequate factual basis for the plea was established during the plea colloquy. See Oct. 30, 2002 Tr. at 12-14; Fed. R. Crim. P. 11(f) (2001). Additionally, at the plea colloquy, defendant affirmatively responded that he had read the Plea Agreement and discussed it with his attorney. Oct. 30, 2002 Tr. at 10. In the Plea Agreement itself, "[d]efendant acknowledges that he has read

---

hearing itself. United States v. Vonn, 122 S. Ct. 1043, 1054-55 (2002).

this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement." Plea Agreement ¶ 23. At the plea colloquy, defendant also affirmatively responded that his plea was voluntary. Oct. 30, 2002 Tr. at 11-12. There is no present contention that defendant was actually unaware of or could not understand any of the contents of his Plea Agreement. There is also no present contention that defendant's plea was not knowing and voluntary or that he would not have pleaded guilty had he been more fully advised. See Elkins, 176 F.3d at 1022. Instead, citing to United States v. Vonn, 122 S. Ct. 1043 (2002), defendant asserts that, as to any failure to advise regarding a particular Rule 11(c) (2001) requirement, the burden is on the government to show that the omission was harmless error. Defendant asserts that the government has not met this burden and, therefore, a hearing is required regarding harmless error.

Rule 11(h) (2001), in effect at the time of the plea colloquy, provided: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."[12] The Supreme Court has construed Rule 11(h) (2001) as incorporating a harmless error standard. Vonn,

---

[12]Rule 11(h) (2002) now provides: "A variance from the requirements of this rule is harmless error if it does not affect substantial rights."

122 S. Ct. at 1048. <u>See</u> Fed. R. Crim. P. 52(a) (2001).[13] In

<u>Vonn</u>, the Supreme Court considered whether, as to a Rule 11 issue

raised for the first time on appeal, the plain error provisions

of Rule 52(b) applied to the Rule 11(h) harmless error

determination. <u>Vonn</u>, 122 S. Ct. at 1048-54, held that the plain

error standard applied, including that the defendant bears the

burden of showing substantial rights were affected. In reaching

that conclusion, the court indicated that, absent plain error

review, the government would bear the burden of showing Rule

11(h) (2001) harmless error just as it bears the burden of

showing Rule 52(a) harmless error. <u>See</u> <u>Vonn</u>, 122 S. Ct. at 1048.

<u>See also</u> <u>United States v. Jimenez-Dominguez</u>, 296 F.3d 863, 866

(9th Cir. 2002), <u>cert. denied</u>, 123 S. Ct. 984 (2003) (<u>dictum</u>).

Here, however, defendant pleaded guilty on October 30, 2002. He

did not raise any Rule 11 errors until moving to withdraw his

guilty plea almost four months later. Where a defendant,

particularly one represented by an attorney at the plea colloquy,

does not raise any Rule 11 errors at the time of the plea

colloquy itself, the plain error rule applies and defendant

bears the burden of showing a harmful effect. <u>See</u> <u>Vonn</u>, 122

S. Ct. at 1054 & n.10; <u>id.</u> at 1057 (Stevens, J., concurring in

part, dissenting in part); <u>United States v. Dominguez Benitez</u>,

310 F.3d 1221, 1225 (9th Cir. 2002); <u>id.</u> at 1227 (Tallman, J.,

---

[13]The December 1, 2002 amendments to Rule 52 were
"stylistic only." 2002 Committee Notes to Fed. R. Crim. P. 52.

dissenting). Defendant bears the burden of showing that any Rule 11 violation that occurred affected a substantial right and thus harmed him.

But even if the burden were on the government to show that any Rule 11 violations were harmless because the violations did not prevent defendant's guilty plea from being knowing and voluntary or affect his decision to plead guilty, the evidence before the court meets that burden with there being no contrary evidence (nor even a contrary allegation). See United States v. Driver, 242 F.3d 767, 769 (7th Cir. 2001), cert. denied, 535 U.S. 926 (2002) ("A [Rule 11] violation would be harmless when the defendant already knew the information omitted by the judge-- when, for example, his own lawyer had told him about cross- examination, or the written plea agreement had specified the maximum possible punishment."). With limited exception discussed below, all the alleged omitted Rule 11 advice was expressly set forth in the Plea Agreement. Defendant acknowledged in the Plea Agreement itself that he had read and understood the Plea Agreement. Defendant also stated, under oath during the plea colloquy, that he read the Plea Agreement and adequately discussed it with his attorney. Therefore the evidence before the court only supports that defendant was aware of all the issues for which there was not strict compliance with Rule 11(c) or 11(e)(2). Cf. United States v. Diaz-Vargas, 35 F.3d 1221, 1225 (7th Cir. 1994). Thus, defendant had all the knowledge

called for by Rule 11 and the only reasonable inference to draw
therefrom is that defendant still would have pleaded guilty if he
had also been explicitly advised as to these issues during the
plea colloquy. The evidence and allegations before the court do
not involve any material factual issue that requires there be a
hearing on the alleged Rule 11 errors.

Considering each of the claimed Rule 11 errors in turn,
the court finds as follows. Defendant contends he was not
advised that he could be ordered to pay restitution. See Fed. R.
Crim. P. 11(c)(1) (2001). However, defendant was advised that,
under the penalty provisions of the applicable statute, he could
be ordered to pay restitution. Oct. 30, 2002 Tr. at 11.
Paragraphs 8 and 17 of the Plea Agreement also set forth that
restitution could be ordered. Defendant was adequately advised
as to the possibility of restitution.

Defendant contends he was not advised of "the right
against compelled self-incrimination." Fed. R. Crim. P. 11(c)(3)
(2001). However, he responded affirmatively to the questions:
"Do you understand that you would have a right to testify if you
wished to do so? However, if you wish to remain silent, your
silence could not be used against you? Do you understand that?"
Oct. 30, 2002 Tr. at 8-9. Being able to remain silent and
not have it used against the defendant is the right against
compelled self-incrimination. The words "compelled" and

"self-incrimination" need not be ritualistically invoked.[14]  At
the plea colloquy, defendant was adequately advised as to the
right against self-incrimination.  Additionally, defendant does
not deny that he read and was aware of the Plea Agreement's
statement that "[a]t a trial, defendant would have a privilege
against self-incrimination so that he could decline to testify,
and no inference of guilt could be drawn from his refusal to
testify."  Plea Agreement ¶ 10(e).

   The right to counsel at trial was not explicitly set
forth during the plea colloquy nor is it explicitly set forth in
the Plea Agreement.  At the plea colloquy, though, it was stated
that it had to be determined and it was found that defendant had
the assistance of counsel for the plea proceedings.  See Oct. 30,
2002 Tr. at 3-4, 10, 14.  Also, without expressly stating
defendant had a right to counsel, it was mentioned that defendant
might be represented by an attorney at trial.  See id. at 9 ("You
or your lawyer have a right to ask to have persons" excluded from
the jury.).  See also Plea Agreement ¶¶ 10(b) ("Defendant and his
attorney would have a say in who the jurors would be"), 10(d)
(defendant's "attorney would be able to cross-examine" witnesses
at trial).  Additionally, defendant has been represented by an
attorney throughout this case and the trial of this case was

_____

   [14]Before being placed under oath at the plea colloquy,
defendant was also advised that by testifying at the plea
colloquy, "you will be waiving your right not to testify against
yourself.  Some of your answers will be incriminating, . . . ."
Oct. 30, 2000 Tr. at 4.

scheduled to start less than a week after the plea colloquy.
Defendant's attorney was actively engaged in preparing for trial
until very shortly before the change of plea. Defendant, who
personally appeared (along with his attorney) at many of the
status hearings in this case was well aware that his attorney
would be representing him at trial. Also, defendant is himself
an attorney who would be well aware that he could be represented
by an attorney at trial. The evidence before the court only
supports that defendant was aware that, had he gone to trial, he
could be represented by an attorney. Therefore, no hearing need
by held to determine if defendant was adequately aware of this
advice nor to determine if failing to explicitly advise him of it
during the plea colloquy affected his decision to plead guilty.

Defendant contends that the court failed to give the
advice required by Rule 11(e)(2) (2001), which provides: "If the
agreement is of the type specified in subdivision (e)(1)(B), the
court shall advise the defendant that if the court does not
accept the recommendation or request the defendant nevertheless
has no right to withdraw the plea." Such a plea agreement is one
in which "the attorney for the government will: (B) recommend, or
agree not to oppose the defendant's request for a particular
sentence or sentencing range, or that a particular provision of
the Sentencing Guidelines, or policy statement, or sentencing
factor is or is not applicable to the case. Any such
recommendation or request is not binding on the court." Fed. R.

Crim P. 11(e)(1)(B) (2001) (emphasis added). At the plea
colloquy, defendant was advised that the court would make the
final decision as to an appropriate sentence, but he was not
advised that he could not withdraw his guilty plea if the court
reached a conclusion as to the applicable sentencing range that
was different from that contained in the Plea Agreement or if the
court did not follow a sentencing recommendation contained in the
Plea Agreement. See Oct. 30, 2002 Tr. at 12. If the Plea
Agreement was a Rule 11(e)(1)(B) (2001) agreement, this advice
did not comply with Rule 11(e)(2) (2001). See Hauptman, 111 F.3d
at 51; Diaz-Vargas, 35 F.3d at 1224-25; United States v.
Martinez, 277 F.3d 517, 530-31 (4th Cir.), cert. denied, 123
S. Ct. 200 (2002).

The Plea Agreement in this case, however, is not a Rule
11(e)(1)(B) (2001) agreement that would have triggered the advice
requirement of Rule 11(e)(2) (2001). The Plea Agreement provides
that the court is not bound by any sentencing recommendation or
calculation of the parties. See Plea Agreement ¶¶ 6(e), 16.
The Plea Agreement does not contain any citation to Rule
11(e)(1)(B) (2001) nor was that Rule mentioned during the plea
colloquy. Most importantly, the government does not agree to
recommend a particular sentence, sentencing range, or application
of a particular sentencing provision, nor does it agree not to
oppose any particular request of defendant. Paragraph 15 of the
Plea Agreement does provide that, "[a]t the time of sentencing,

the government shall recommend a sentence within the applicable
guidelines range."  That, however, does not require that the
government recommend a _particular_ sentencing range nor does it
require that the government recommend a _particular_ sentence or
even a _particular_ spot within an unspecified range.  Compare
United States v. Oyegbola, 961 F.2d 11, 14 (1st Cir. 1992)
(agreement to recommend a sentence at the lowest end of the
applicable guideline range qualified as "recommendation . . . for
a particular sentence" under Rule 11(e)(1)(B)[15]); United
States v. Ewing, 957 F.2d 115, 118 (4th Cir.), cert. denied, 505
U.S. 1210 (1992) (same).  Arguably, the stated stipulations and
agreement regarding the preliminary Guideline calculations, see
Plea Agreement ¶ 6, implicitly constitute an agreement not to
oppose any request by defendant to apply the indicated sentencing
range.[16]  Compare United States v. Bennett, 990 F.3d 998, 1002-03
& n.6 (7th Cir. 1993); United States v. Monteith, 2001 WL 627424
*2 (D.N.D. March 12, 2001).  Compare also United States v.

_____

[15]Prior to December 1, 1999, Rule 11(e)(1)(B) read:  "the
attorney for the government will:  . . . (B) make a
recommendation, or agree not to oppose the defendant's request,
for a particular sentence, with the understanding that such
recommendation or request shall not be binding upon the court."

[16]Paragraph 16 of the Plea Agreement provides in part:
"The defendant further acknowledges that if the Court does not
accept the defendant's sentencing recommendation, the defendant
will have no right to withdraw his guilty plea."  Nothing else in
the Plea Agreement refers to a "sentencing recommendation" of the
defendant.  This may simply mean any recommendation that the
defendant may make during the sentencing hearing or, perhaps, it
was intended as a reference to the preliminary Guidelines
calculation contained in ¶ 6 of the Plea Agreement.

Rhodes, 253 F.3d 800, 803, 804 (5th Cir. 2001) (provision that
"[p]ursuant to Federal Rule of Criminal Procedure 11(e)(1)(B)
both parties stipulate and agree" a particular Guideline
provision applies constitutes a Rule 11(e)(1)(B) (2001)
agreement).  However, the Plea Agreement does not expressly state
that the government must recommend the stipulated calculation or
refrain from opposing defendant arguing for the stipulated
calculation.  To the contrary, ¶ 7 of the Plea Agreement
expressly provides that the parties are free to correct any
"[e]rrors in the calculations or interpretation of any of the
guidelines" and may do so through statements directly to the
probation officer or court setting forth "the disagreement as to
the correct guidelines and their application."  Thus, the Plea
Agreement expressly provides that the government is not required
to recommend the preliminary Guidelines calculation nor refrain
from opposing any view defendant may have as to a Guidelines
calculation.  The government has not made any promise that
brought the Plea Agreement within the purview of Rule 11(e)(1)(B)
(2001).  Therefore, there could be no violation of Rule 11(e)(2)
(2001)'s advice requirement.

        Even if the Plea Agreement were to be construed as a Rule
11(e)(1)(B) (2001) plea agreement, the failure to provide the
11(e)(2) (2001) advice at the plea colloquy would not be a basis
for granting withdrawal of defendant's guilty plea.  The Plea
Agreement provides that defendant may not withdraw his plea in

the event the court does not accept the preliminary Guidelines
calculation contained therein or the parties' recommendations.
See Plea Agreement ¶¶ 6(e), 7, 16. As previously discussed,
defendant was aware of the provisions of the Plea Agreement and
is a sophisticated person who would have understood the Plea
Agreement. Under such circumstances, no sufficient basis exists
for withdrawing a guilty plea based on failure to provide the
Rule 11(e)(2) (2001) advice at the plea colloquy. See Diaz-
Vargas, 35 F.3d at 1225-26; Hauptman, 111 F.3d at 51; United
States v. McCarthy, 97 F.3d 1562, 1575-76 (8th Cir. 1996), cert.
denied, 519 U.S. 1139, 520 U.S. 1133 (1997); United States v.
Vaughn, 7 F.3d 1533, 1536 (10th Cir. 1993), cert. denied, 511
U.S. 1036 (1994). Compare Dominguez Benitez, 310 F.3d at 1225-
27. In any event, this claim would fail because defendant does
not even conclusorily assert that he would not have pleaded
guilty had he been advised in accordance with Rule 11(e)(2). See
Martinez, 277 F.3d at 533; Vaughn, 7 F.3d at 1536.

At the plea colloquy, defendant was advised that, if he
went to trial and was found guilty, he would have the right to
appeal, but that he was waiving that trial related right and
others by choosing to plead guilty. Oct. 30, 2002 Tr. at 9. At
the plea colloquy, defendant was not advised regarding ¶ 12 of
the Plea Agreement in which he waived the right to appeal any
sentence not involving an upward departure and waived the right
to collaterally attack his conviction or sentence other than

based on certain claims going to the appellate waiver itself. Rule 11(c)(6) (2001) provides that a defendant should be advised regarding any provision of a plea agreement that waives the right to appeal or collaterally attack the sentence. Again, this is an express provision of the Plea Agreement that was read and understood by defendant and of which defendant was aware. Compare Standiford, 148 F.3d at 869. The record supports that defendant was aware of this provision and that he would not have changed his mind as to pleading guilty had he been advised of it during the plea colloquy. In any event, defendant does not even allege that this lack of advice at the plea colloquy caused his plea to not be knowing or voluntary or that he would have pleaded otherwise had he been advised. No sufficient basis for withdrawing the plea is presented.

At the plea colloquy, defendant was not advised as to the possibility of departing from the Guidelines. See Fed. R. Crim. P. 11(c)(1) (2001). However, the appellate waiver provision contained in ¶ 12 of the Plea Agreement provided that all appellate rights were waived "except that the defendant reserves the right to appeal any upward departure imposed by the Court." As previously set forth, defendant was aware of and understood the terms of the Plea Agreement and had discussed them with his attorney. Therefore, the record shows that defendant was aware of the possibility of a departure from the Sentencing Guidelines. Thus, it can only be found that defendant's guilty plea was

knowing and voluntary and that he would not have declined to plead guilty if, during the plea colloquy, he had been advised of the possibility of departures from Guideline provisions. In any event, defendant does not even allege that this lack of advice at the plea colloquy caused his plea to not be knowing or voluntary or that he would have pleaded otherwise had he been advised. No sufficient basis for withdrawing the plea is presented.

Last, defendant contends he was not advised as to the effect of any special parole or supervised release term. See Fed. R. Crim. P. 11(c)(1) (2001). Since special parole no longer exists and is not a possible sentence in this case, it was not necessary to advise defendant as to special parole. Defendant acknowledges that he was advised as to the possible length of a term of supervised release, see Oct. 30, 2002 Tr. at 11, but contends that he was not adequately advised as to its "effect." Rule 11(c)(1) (2001) provides in part that the defendant should be advised as to "the maximum possible penalty provided by law, including the effect of any special parole or supervised release term." The phrase after the comma is a modifier of maximum possible penalty. By "effect," the Rule means the effect on the maximum possible penalty, that is by extending the period beyond the years of a maximum sentence. Such a construction is consistent with Rule 11(b)(1)(H) (2002), which omits the word "effect" and was meant only to be a stylistic change as regards supervised release. See 2002 Committee Notes 2d ¶. Thus, the

Seventh Circuit has held that it is harmless error to omit advice
as to the effect of supervised release or even supervised release
entirely as long as the defendant is advised as to the maximum
possible sentence and has been sentenced to less than the maximum
period that was stated. United States v. Schuh, 289 F.3d 968,
974 (7th Cir. 2002); Elkins, 176 F.3d at 1021-22. See also
United States v. Bachynsky, 934 F.2d 1349, 1360 (5th Cir.), cert.
denied, 502 U.S. 951 (1991). There is no foreseeable possibility
that defendant would be sentenced to a term of custody and
supervised release that would exceed the 30-year statutory
maximum of which he was informed. Therefore, any failure to
adequately advise defendant as to the effect of supervised
release was harmless. In any event, he has not stated a basis
for withdrawing his plea because he does not contend that he
would have pleaded differently had supervised release been more
fully discussed at the plea colloquy. Elkins, 176 F.3d at 1022.

        Defendant is himself an attorney and has been vigorously
represented throughout this case by experienced criminal defense
counsel. The record supports that defendant was well aware of
the rights he was waiving by pleading guilty and that he was well
aware of the terms and provisions of the Plea Agreement that he
read and signed, including that any decision as to his sentence
was to be made by the court in accordance with the Sentencing
Guidelines and applicable statutes. The record shows that
defendant's decision to plead guilty was knowing and voluntary

and he does not contend otherwise. It is clear that the motion
to withdraw the guilty plea, which was filed almost four months
after defendant pleaded guilty, is primarily motivated by
defendant's perception that there is a substantial possibility
that he will be sentenced based on a sentencing range other than
the 0-6 month range preliminarily calculated in the Plea
Agreement. Defendant's Plea Agreement does not contain a
Rule 11(e)(1)(C) (2001) provision with a binding sentencing
recommendation and defendant was well aware of that at the time
he pleaded guilty. Thus, defendant's new estimation or
subsequent misgivings about the sentence that might be imposed is
not a sufficient basis for finding either that his guilty plea
was not knowing and voluntary or that a fair and just reason
otherwise exists for withdrawing the guilty plea. See Underwood,
174 F.3d at 852-54. A defendant who is offered a Plea Agreement
that he viewed as valuable and accepts it after full and careful
consideration, is not entitled to withdraw the guilty plea when
his reassessment of the offer results in a less attractive view
of the agreement. See Hauptman, 111 F.3d at 51. Defendant's
arguments concerning the Rule 11 plea colloquy state no
sufficient basis for finding that his guilty plea was not knowing
and voluntary. As is fully discussed above, there is no
contention raised regarding the Rule 11 colloquy that requires an
evidentiary hearing in order to determine if a fair and just
reason exists for withdrawing defendant's guilty plea.

## B.  Mutual Mistake

Pointing to the contractual nature of a plea agreement and the expectations of both parties that defendant would be sentenced based on a 0-6 month sentencing range, defendant contends there was a mutual mistake[17] by the parties that entitles him to void the contract, that is, withdraw from the Plea Agreement.  United States v. Barnes, 83 F.3d 934, 938-39 (7th Cir.), cert. denied, 519 U.S. 857 (1996), is directly on point and to the contrary.  Barnes recognizes that ordinary contract principles generally apply to plea agreements and thus theories of mutual mistake may be a basis for invalidating a plea agreement.  Id. at 938.  However, Barnes also recognizes that a mutual mistake must go to an essential term of a contract in order to be a basis for invalidating the contract.  Id.  Barnes holds that, where the court is not bound by the parties' understanding or estimation of the correct sentence, the sentence is not an essential term of the contract and therefore sentence misunderstanding cannot be a mutual mistake that constitutes a basis for voiding the plea agreement or withdrawing from the plea.  Id. at 938-39.  That is the situation in the present case. Loutos's Plea Agreement expressly provides that the court is not bound by the preliminary sentencing calculation contained therein

---

[17]The court has not yet made a determination as to the appropriate sentencing range.  For purposes of considering this aspect of defendant's motion, however, it will be assumed that the sentencing range ultimately determined will be higher than 6 months' custody.

and Loutos was advised as to that provision during the Rule 11
plea colloquy.

The cases cited by defendant are distinguishable.  In
United States v. Williams, 198 F.3d 988, 992-94 (7th Cir. 1999),
the parties assumed, and the plea agreement expressly stated,
that Williams' maximum statutory sentence was 10 years'
incarceration, but Williams was actually subject to a 15-year
minimum.  That is not the situation in the present case.  There
is no indication that Loutos might be subject to a sentence
greater than the 30-year statutory maximum set forth in the Plea
Agreement and stated during the plea colloquy.

In United States v. Rothberg, 2001 WL 1654758 (N.D. Ill.
Dec. 20, 2001), the Plea Agreement indicated the loss valuation
was over $1,000,000, but this was based on the parties'
understanding that the actual loss was $1,100,000.  Defendants
were charged with copyright violations based on pirated software.
The loss figure was based on the unauthorized software programs
that were on defendants' computer site at the time defendants'
computer equipment was seized.  At the time of the plea
agreement, defendants and the government understood that
no technical basis existed for determining any additional
unauthorized software programs had previously been accessed.
However, between the time of the guilty pleas and sentencing, the
government was able to recover additional data showing losses in
excess of $10,000,000.  The court characterized the particular

situation in Rothberg as being an unusual circumstance[18] distinguishable from most mutual mistake situations where withdrawal of the guilty plea would not be appropriate.

> [I]n . . . the vast majority of other cases in which the Guideline calculation turns out different from what is expected, the parties have some level of awareness, or at least have a basis to be aware, that different information could turn up. In this case, by contrast, the parties did not believe that it was possible to extract the information regarding the earlier software uploads. That unusual state of affairs differentiates this case from others in which the parties have made, at the time of the guilty plea, a mutual mistake regarding the Guideline calculation.

Id., 2001 WL 1654758 at *4. That is not the situation in the present case. Here, the parties were well aware of the investment fraud charges and the potential lengthy sentence that Loutos could face if Loutos had pleaded guilty to those charges or if those charges were to be considered relevant conduct to the bank fraud charge for which he pleaded guilty. In the present case, the parties' possible incorrect legal analysis of whether the investment fraud constitutes relevant conduct for the bank fraud, see Loutos I, 2003 WL 168627 at *5-8, is not the same as a plea agreement being based on a mutual and incorrect

---

[18]Since Rothberg is distinguishable from the present case, it is unnecessary to consider whether Rothberg is otherwise correctly decided.

understanding that certain additional evidence going to a
specific fact (loss amount) was nonexistent.[19]

The parties' possible misperceptions of the proper
sentencing range resulting from defendant's guilty plea is not a
fair and just reason for permitting withdrawal of defendant's
guilty plea.  Barnes, 83 F.3d at 938-39.

## C.  Legal Innocence

The Seventh Circuit has recognized legal innocence as a
fair and just reason to withdraw a guilty plea.  Hodges, 259 F.3d
at 661.  Bare protestations of innocence, however, are not
sufficient; the defendant must proffer credible evidence
supporting innocence.  Id.; United States v. Gomez-Orozco, 188
F.3d 422, 425 (7th Cir. 1999).  In situations like the present
one, where defendant's present contentions as to innocence are in
direct conflict with admissions he made under oath at the plea
colloquy, he must overcome the "strong presumption of verity"
accorded the admissions at the plea colloquy.  United States v.
Silva, 122 F.3d 412, 415 (7th Cir. 1997) (quoting Blackledge v.
Allison, 431 U.S. 63, 74 (1977)); Groll, 992 F.2d at 758.
Moreover, when it is also true that the evidence the defendant
presently relies upon in order to show innocence was already
known by him at the time of the guilty plea, the court "is

---

[19]It is further noted that, contrary to defendant's
current assertion, there was no stipulation in the Plea Agreement
that the bank fraud did not involve any investment fraud relevant
conduct.  See Plea Agreement ¶ 17; Loutos I, 2003 WL 168627
at *4.

generally justified in discrediting" the claim of innocence.
Groll, 992 F.2d at 758. See also Silva, 122 F.3d at 415;
Rinaldi, ___ F. Supp. 2d at ___, 2003 WL 554541 at *2.
Additionally, the court is to consider the assertions of
innocence in light of all the other evidence, including
sentencing evidence, that has been before the court. See Silva,
122 F.3d at 415-16. In this case, that includes the evidence
presented at the trial of the codefendants. See Loutos I, 2003
WL 168627 at *3.

The charge to which defendant pleaded guilty was bank
fraud in violation of 18 U.S.C. § 1014. While the investment
fraud that was originally charged may be pertinent as relevant
conduct, see Loutos I, 2003 WL 168627 at *5-8, it is not the
offense upon which the guilty plea is based. The question of
whether defendant is legally innocent concerns whether he is
legally innocent of the single § 1014 bank fraud charge.
Evidence related to the investment fraud may still be pertinent
to that decision. For example, evidence that defendant knew of
the investment fraud scheme may be relevant to showing
defendant's intent or the surrounding circumstances at the time
the bank fraud was committed. However, defendant's claim of
legal innocence cannot be based solely on being legally innocent
of the investment fraud; he must be legally innocent of the bank
fraud charge.

The § 1014 charge is based on Loutos aiding Daniel Benson (a codefendant convicted of the investment fraud) in opening a bank account for Lennox Investment Group, Ltd. ("Lennox") at First of America Bank, an FDIC-insured bank. On the application to open the account, it was falsely represented that Benson was the sole owner of Lennox. Loutos now contends that he was not guilty of this offense because he was unaware that Benson would make the false statement regarding his ownership of Lennox. Notably, Loutos does not contend that he did not know that the statement was false, only that he did not know in advance that Benson would make the false statement in order to open the bank account. Loutos contends he did not have the intent to assist or further Benson's offense.

The elements of the charged § 1014 offense are (1) making a false statement to a bank; (2) knowing the statement was not true at the time it was made; (3) having the intent to influence the bank to take some action, in this case open an account, and (4) the bank is insured by the FDIC. See United States v. Wells, 519 U.S. 482, 490 (1997); United States v. Lane, ___ F.3d ___, ___, 2003 WL 1450019 *10 (7th Cir. March 24, 2003); United States v. Swanquist, 161 F.3d 1064, 1076 (7th Cir. 1998), cert. denied, 526 U.S. 1160 (1999). Materiality of the false statement is not an element of the offense. Wells, 519 U.S. at 490; Lane, ___ F.3d at ___, 2003 WL 1450019 at *10. Here, defendant is accused of aiding and abetting Benson's conduct. To aid and abet

the bank fraud, defendant must have knowingly associated with Benson's bank fraud, have participated in the activity, and have tried to make it succeed. United States v. Blocker, 104 F.3d 720, 733 (5th Cir. 1997). See also United States v. Scott, 267 F.3d 729, 733 (7th Cir. 2001); United States v. Stott, 245 F.3d 890, 904 (7th Cir.), cert. denied, 534 U.S. 1070 (2001).

At the plea colloquy, the government set forth a factual basis for the guilty plea and Loutos acknowledged it was correct. Oct. 30, 2002 Tr. at 12-14. Paragraph 5 of the Plea Agreement contains an admission as to a similar statement describing the facts supporting the offense. Among other facts, defendant admitted (a) he accompanied Benson to the bank in order to aid and assist him in opening a bank account; (b) he knew both that Benson was not an owner, officer, or employee of Lennox and that Benson did not have the necessary authorization from the corporation to open a bank account on its behalf; (c) defendant, who had a long-term relationship at the bank, convinced a bank employee to open the account without the usual corporate authorization documents; (d) defendant completed a deposit account signature card in his own name and was aware Benson completed a signature card in Benson's name; (e) defendant observed Benson complete a sole owner certification and was aware that it contained a false statement as to Benson's ownership; and (f) defendant did this for the purpose of influencing the bank to open the account. That evidence sufficiently supports the

charged offense of aiding and abetting a bank fraud, see Blocker, 104 F.3d at 734, and defendant does not contend otherwise.

Defendant does not dispute that he intended to assist Benson in opening the account, but now contends that he did not intend to do it through the use of false statements by Benson. In support of his current contention, defendant points to statements of two bank employees, deposition testimony he gave during the SEC's civil proceedings related to the investment fraud, and the SEC's limited finding regarding Loutos's involvement in securities fraud. As part of the proceedings in the present case, defendant had access to all these materials prior to his October 30, 2002 guilty plea.

Defendant cites to deposition testimony of two bank employees, one of whom was the bank employee who processed the opening of the Lennox account. Defendant points to their testimony and contends it does not implicate him. That, however, does not aid him on his present motion. Defendant must point to credible evidence that refutes and overcomes the inculpatory admissions he made at the plea colloquy. The employee who opened the Lennox account does not recall her meeting with Benson and Loutos. The other employee was not involved in opening the Lennox account. Thus, neither offers any testimony that aids defendant in showing legal innocence.

Defendant also points to an SEC Action Memorandum. This is a document from the SEC Regional Office to the SEC in which

certain actions are recommended related to the securities fraud
that was the subject of a civil action brought by the Securities
and Exchange Commission. See United States v. Peitz, 2002 WL
31101681 *2 (N.D. Ill. Sept. 30, 2002) ("Peitz III"). Loutos is
not mentioned by name in the Action Memorandum, but there are two
references to Benson's attorney, meaning Loutos. After
mentioning that Benson executed nearly all the transactions in
the Lennox account, the following is added in a footnote:
"Benson's attorney executed at least one transaction when Peitz
was unable to locate Benson. However, the staff uncovered no
evidence that the attorney knowingly participated in, or was
aware of, the scheme to defraud investors." Id. As part of
ruling on whether the government should be required to disclose
all or part of the Action Memorandum to Loutos and his
codefendants, the court considered whether the Action Memorandum
possibly contained admissible evidence. Based on admissibility
pursuant to Fed. R. Evid. 803(8)(C), it was held that, "[o]n the
information and arguments presently before the court, the
statement in footnote 11 would be admissible if Loutos chooses to
present it." Peitz III, 2002 WL 31101691 at *5. Even assuming
the statement were to be admitted at a trial of the criminal
charges against Loutos,[20] a conclusory statement from a civil

<hr />

[20]As stated in Peitz III, the ruling as to admissibility
was based on the information and arguments then before the court.
If, prior to its admission, the government had raised Fed. R.
Evid. 403 concerns, including possible jury confusion in
comparing the evidence presented in court to the evidence

agency investigating securities law violations that Loutos was
not a participant in or aware of the scheme to defraud is not
likely to carry much weight in light of the evidence the
government could present at trial regarding Loutos's knowing
participation in the scheme actually charged in this case. See
Loutos I, 2003 WL 168627 at *7. But even if that statement, of
which defendant was aware at the time he pleaded guilty, were
sufficient to raise an issue as to his legal innocence of
investment fraud, it would not be a basis for permitting
withdrawal of the guilty plea. As previously emphasized,
defendant must show he is legally innocent of bank fraud, not
just that he is legally innocent of the investment fraud for
which he was originally charged.

Last, defendant points to his own deposition testimony
during SEC civil proceedings. At the Quilling deposition,[21]
defendant testified that he accompanied Benson to assist him in
opening the Lennox account and that he was a signatory for the
account. Loutos Quilling Dep. at 58. He also testified that
this was unusual in that this was the only time he had ever done

submitted to the SEC for a decision on whether or not to bring
a civil action alleging securities law violations, the Action
Memorandum footnote may not have been admitted at trial. See
Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1018 (7th Cir.
2000); Klein v. Vanek, 86 F. Supp. 2d 812, 820-21 (N.D. Ill.
2000).

[21]Excerpts from the February 21, 2001 deposition of
Loutos in proceedings brought by Michael Quilling as the receiver
for Lennox is provided as Exhibit B to defendant's motion to
vacate plea (hereinafter "Loutos Quilling Dep.").

- 42 -

either of these for a client.  Id.  Central to facts supporting
the bank fraud charge in this case, defendant testified that he
was aware that Benson was not an owner of Lennox, id. at 91,
98-99, and that he was aware Benson nevertheless completed a sole
ownership certificate, id. at 98-100.  Defendant also testified
that this was done to expedite the opening of the account and
that he did not think this was intended to create a false
impression, id. at 99-100, but he also testified that the usual
practice would be to open the corporate account and then have the
corporation issue the required resolution thereafter.  Id. at 90.
As to the exact details of key issues such as how it was decided
to open the account as a sole owner and who initiated what
(Loutos, Benson, or the bank employee), Loutos repeatedly stated
he did not remember or was uncertain.  See id. at 92-99.
Previously, on May 24, 1999, Loutos had testified in a deposition
in the SEC's civil action.[22]  During that deposition, regarding
the opening of the Lennox account, Loutos testified that he could
not recall anything about what was said about Benson's
affiliation with Lennox.  Loutos SEC Dep. at 79-80.

    To some extent, Loutos's deposition testimony
corroborates inculpatory statements he made at the plea colloquy.
The only potentially exculpatory testimony is that Loutos did not
go to the bank already expecting Benson to make false statements,

---

    [22]An excerpt from this deposition is provided as
Exhibit G to defendant's motion to vacate plea (hereinafter
Loutos "SEC Dep.").

but even that is not necessarily inconsistent with the statement at the plea colloquy that he went to the bank to assist Benson in opening the account. In any event, even if Loutos went to the bank not expecting Benson to make false statements, he did nothing to stop his client from making statements on bank forms that Loutos admitted he knew were false. Primarily, however, Loutos testified during the two depositions that he did not recall the details of the opening of the Lennox account. The equivocal testimony at defendant's two depositions, where he had an interest in avoiding possible liability, is certainly not enough to satisfy the heavy burden of overcoming the presumption of verity accorded defendant's subsequent testimony at the plea colloquy. Defendant has not presented sufficient credible evidence to support his claim of legal innocence.

### III.  CONCLUSION

Defendant does not point to any sufficient ground that requires an evidentiary hearing in order to determine if he can establish a reason for withdrawing his guilty plea. As indicated at the last status hearing, defendant's sentencing will be May 14, 2003, but it will be at 11:30 a.m. By April 16, 2003, the probation officer shall provide the parties and court with a supplemental or revised PSR taking into consideration the issues raised in Loutos I and the sentencing memoranda that were thereafter filed by the parties. Any objections to the

supplemental or revised PSR are to be filed by April 25, 2003. A status hearing will be set for April 30, 2003 at 11:00 a.m. at which the parties shall be prepared to address the question of whether they believe any evidentiary hearing will be necessary to resolve any sentencing issues and what witnesses, if any, they would anticipate presenting. To the extent a party expects to present a witness, he or it should be prepared to proffer the witness's potential testimony.

IT IS THEREFORE ORDERED that defendant Loutos's motion to vacate plea [238] is denied. The revised or supplemental PSR for Loutos is to be provided by April 16, 2003. Any objections to the revised or supplemental PSR are to be filed by April 25, 2003. Status hearing of May 14, 2003 is reset to April 30, 2003 at 11:00 a.m. Sentencing of defendant Loutos is set for May 14, 2003 at 11:30 a.m.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: April 3 , 2003