IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff,           )
                                         )
         v.                              )    No. 01 CR 852-3
                                         )
PETER A. LOUTOS, SR.,                    )
                                         )
                    Defendant.           )

## MEMORANDUM OPINION AND ORDER

In 2001, an indictment was returned charging defendant Peter Loutos and five codefendants with one count of a money laundering conspiracy, eight substantive counts of wire fraud,[1] and seven substantive counts of money laundering. On October 30, 2002, however, Loutos pleaded guilty to one count of a superseding indictment charging him with making a false statement on an application for the purpose of influencing a federally insured bank in violation of 18 U.S.C. §§ 1014 and 2.[2] The preliminary Sentencing Guideline calculation contained in the Plea Agreement determined a total offense level of four and a

---

[1] In prior opinions and continuing in the present opinion, this wire fraud scheme has been referred to as "investment fraud."

[2] In prior opinions and continuing in the present opinion, this charge and conduct have been referred to as "bank fraud."

criminal history category of I for a sentencing range of zero to six months. At the time of the plea colloquy, the court accepted Loutos's plea of guilty, but deferred ruling on acceptance of the Plea Agreement itself until after consideration of the Presentence Report ("PSR"), which was also expected to be after the trial of the codefendants had been completed. See United States v. Loutos, 284 F. Supp. 2d 942, 946-51 (N.D. Ill. 2003) ("Loutos II").

After hearing the evidence that was presented at the trial of Loutos's codefendants and having considered the initial PSR, the parties' supplemental submissions, and possible Guidelines applications, on January 23, 2003, the court accepted Loutos's Plea Agreement. See United States v. Loutos, 2003 WL 168627 (N.D. Ill. Jan. 24, 2003) ("Loutos I"). See also Loutos II, 284 F. Supp. 2d at 949-51 & n.9. The question of the appropriate sentencing range, however, was left open to be determined in further proceedings. It was made clear that the court was not bound by the preliminary Guidelines calculations contained in the Plea Agreement nor the stipulations contained therein. Loutos I, 2003 WL 168627 at *4-5. It was also made clear that additional facts would have to be considered before a determination was made as to the appropriate sentencing range under the then-binding Sentencing Guidelines. See id. at *3-10. Of particular importance to be resolved were the questions of

whether Loutos had participated in the investment fraud and, if so, whether the investment fraud was relevant conduct or should otherwise be considered in sentencing Loutos on the bank fraud charge.

In Loutos I, Loutos and the government were informed of the sentencing issues that would need to be addressed prior to Loutos being sentenced. In light of the ruling in Loutos I, there was a distinct possibility that Loutos would be subject to a sentencing range higher than the 0-6 month range contemplated by the Plea Agreement. About a month after Loutos I was issued, Loutos moved to withdraw his guilty plea. The motion to withdraw his guilty plea was denied. See Loutos II, 284 F. Supp. 2d 942.

As to his sentencing proceedings, Loutos was provided adequate notice of the additional factual issues that would be considered in determining the appropriate sentencing range under the Guidelines. See Loutos I, 2003 WL 168627 at *2-3; United States v. Loutos, 284 F. Supp. 2d 994, 996 (N.D. Ill. 2003) ("Loutos III"). Prior to a determination of the applicable sentencing range, Loutos and the government were provided the opportunity to present whatever additional evidence they desired to present for purposes of sentencing. Loutos was provided the opportunity to call witnesses, but instead chose to submit certain depositions (of himself and others) that were taken in related civil proceedings, transcripts of certain recorded

telephone conversations, and some documentary evidence. See Loutos III, 284 F. Supp. 2d at 996-97.

Loutos did not dispute that the scheme to defraud charged in the original indictment occurred, that his codefendants participated in it, and that it involved more than $11,000,000 of investor funds. See id. at 998. Loutos, however, contended that he did not knowingly participate in the scheme. See id. at 998-99. The court, though, found to the contrary.

> On the evidence before the court, it is found by a preponderance of the evidence that Loutos was aware that investor funds were deposited into the Lennox Account, that they were obtained based on false representations, and that they were being diverted to his codefendants' personal use. It is found that Loutos aided and abetted the investment fraud and that he was a knowing participant. . . .
>
> Although [codefendant] Benson was not an owner of Lennox, Loutos committed the bank fraud by aiding and abetting false statements to that effect so that Benson could open an "escrow" account in Lennox's name. That account was then used to funnel more than $11,000,000 in unlawful proceeds from the investment fraud and also aided that fraud by providing an appearance that the money was safe because in an escrow account over which an attorney had some control.

Id. at 1001. See also id. at 998-1001.

It was further held that the investment fraud was relevant conduct for purposes of determining the Sentencing Guidelines offense level for the bank fraud charge. See id. at 1002-03. Alternatively, it was found and held that the

$11,000,000 in investor losses were caused by the bank fraud and therefore could be considered in determining Loutos's offense level. Id. at 1003.

It was determined that Loutos had a total offense level of 21 and a criminal history category of I. That resulted in a sentencing range of 37 to 46 months incarceration. Id. at 1005. Loutos was sentenced to a total term of incarceration of 37 months to be followed by a three-year term of supervised release. He was also ordered to pay a fine of $1000.00.

On appeal, Loutos contended that he should have been permitted to withdraw his guilty plea. The Seventh Circuit rejected that contention. See United States v. Loutos, 383 F.3d 615, 618-19 (7th Cir. 2004) ("Loutos IV"). Loutos also contended that the court's treatment of the investment fraud as relevant conduct for the bank fraud constituted an abuse of discretion in that the court effectively rejected the Plea Agreement. See id. at 619-20. The Seventh Circuit also rejected this contention. "The district court's decision here does not [a]ffect the validity of the defendant's plea agreement nor does it [a]ffect the court's decision to deny his motion to withdraw because the plea agreement itself says 'it is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the sentencing guidelines, <u>may impose the maximum penalties as set</u>

forth . . . .'" Loutos IV, 383 F.3d at 620 (emphasis in opinion).

Loutos was sentenced in September 2003, prior to the Supreme Court's ruling in Blakely v. Washington, 124 S. Ct. 2531 (2004). Following Blakely, and prior to the Seventh Circuit's ruling in Loutos IV (Sept. 8, 2004), the Seventh Circuit held in United States v. Booker, 375 F.3d 508 (7th Cir. July 9, 2004), that (absent waiver of the right to a jury determination) it was improper to apply Guidelines enhancements based on facts found by the sentencing judge, but not found by the jury or admitted in a plea. Since the Guidelines sentencing range that was applied in sentencing Loutos was based in part on additional facts found by the court, the Seventh Circuit affirmed Loutos's conviction but remanded the case for resentencing in light of the Seventh Circuit ruling in Booker. Loutos IV, 383 F.3d at 620. Loutos was released on bond pending resentencing and remains out on bond. He was incarcerated approximately nine and one-half months before being released on bond.

Prior to the Loutos IV remand, the Supreme Court had already granted certiorari in Booker. See United States v. Booker, 125 S. Ct. 11 (Aug. 2, 2004). The mandate for Loutos IV was issued on October 21, 2004. This court held resentencing in abeyance while awaiting the Supreme Court's decision in Booker. The Supreme Court issued its Booker decision on January 12, 2005.

See United States v. Booker, 125 S. Ct. 738 (2005). The Supreme Court resolved constitutional problems with the Sentencing Guidelines by holding two statutory provisions of the Guidelines would not be enforced.

> [W]e must sever and excise two specific statutory provisions: the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure), see 18 U.S.C. § 3553(b)(1) (Supp. 2004), and the provision that sets forth standards of review on appeal, including <u>de novo</u> review of departures from the applicable Guidelines range, see § 3742(e) (main ed. and Supp. 2004). . . . With these two sections excised (and statutory cross-references to the two sections consequently invalidated), the remainder of the Act satisfies the Court's constitutional requirements.

Id. at 764.

Following the Supreme Court's ruling in Booker,[3] the parties were provided the opportunity to address the question of appropriate procedures for resentencing Loutos, as well as what factors and possible additional evidence should be considered in resentencing Loutos. Although not clearly articulated, defendant apparently contends that the court should again hear evidence on the question of whether he is responsible for the $11,000,000 in losses and that proof beyond a reasonable doubt should be

---

[3] Unless indicated otherwise, further references to Booker will be referring to the Supreme Court's opinion.

required in order to attribute that loss to him. Apparently in the alternative, defendant suggests that, consistent with the Plea Agreement and in order to avoid the need for a lengthy evidentiary hearing, the court simply sentence defendant to the time he has already served. In his brief, defendant also sets forth some facts about his family, education, and work history, his own health, and his wife's poor health, apparently suggesting that these factors also be considered in determining his new sentence. In response, the government sets forth that, consistent with the Plea Agreement and its obligations thereunder, it continues to take the position that the investment fraud is not relevant conduct and that defendant should be sentenced based on a 0-6 month sentencing range. The government concedes that the investment fraud involved a $11,000,000 loss, but contends that should not be considered when sentencing this defendant.

The positions taken by the parties are inconsistent with sentencing procedures following the Supreme Court's decision in <u>Booker</u> and are also inconsistent with prior rulings in this case which were not overturned in <u>Loutos IV</u>.

Contrary to Loutos's contention, <u>Booker</u> does not require that all factual issues that may affect the sentence that is imposed be proved beyond a reasonable doubt. Sentencing facts need only be proved beyond a reasonable doubt if they would

negatively affect (from the defendant's perspective) a mandatory aspect of sentencing. Following <u>Booker</u>, the Sentencing Guidelines are not mandatory and courts retain discretion to sentence within the applicable statutory range. <u>See</u> <u>Booker</u>, 125 S. Ct. at 765-67; <u>United States v. Schlifer</u>, 403 F.3d 849, 853 (7th Cir. 2005). Facts affecting the statutory range must be proved beyond a reasonable doubt or be admitted by the defendant (in a plea agreement or otherwise). Facts establishing the nonmandatory Guideline sentencing range may still be found by the court by a preponderance of the evidence. <u>McReynolds v. United States</u>, 397 F.3d 479, 481 (7th Cir. 2005); <u>United States v. Smith</u>, 359 F. Supp. 2d 771, 773 (E.D. Wis. 2005). "As a practical matter, . . . sentences would be determined in the same way [as before <u>Blakely</u> and <u>Booker</u>]; the only change would be the degree of flexibility judges would enjoy in applying the guideline system." <u>McReynolds</u>, 397 F.3d at 481.

Under the present post-<u>Booker</u> sentencing regime, the district court first determines the sentencing range under the Sentencing Guidelines. Any factual issues that are not conclusively established by a trial, plea agreement, or stipulation are resolved by the court. Then, taking into account any pertinent factors set forth in 18 U.S.C. § 3553(a), the court determines whether to sentence within the Guidelines sentencing range. The court is not bound to sentence within the range, but

any decision to sentence outside the range must be reasonable. See United States v. George, 403 F.3d 470, 472-73 (7th Cir. 2005); Smith, 359 F. Supp. 2d at 772-73.

Here, the court previously resolved all factual and legal issues regarding the applicable sentencing range under the Guidelines. As previously discussed, Loutos was already provided a full opportunity to present evidence supporting his factual contentions regarding the appropriate Guidelines sentencing range. Neither due process nor the Seventh Circuit's remand requires that that process be reopened. Loutos will not be provided a second opportunity to present evidence purportedly showing that he did not knowingly participate in the investment scheme. Neither Loutos nor the government point to any case law from before or after the Loutos III ruling that convinces this court that it should modify the findings or holdings of Loutos III. The difference on remand is that the applicable sentencing range will no longer be treated as being binding and mandatory. At the upcoming sentencing hearing, Loutos and the government may argue, based on any appropriately considered factor, that the court should sentence Loutos below or above the sentencing range. As to new and pertinent facts upon which Loutos may rely, Loutos should promptly inform the probation officer.

A sentencing hearing will be held on June 8, 2005 at 11:30 a.m. By May 31, 2005, the probation officer shall provide the court with a supplemental PSR, including any updated information and any recommendation regarding the sentence to be imposed.

IT IS THEREFORE ORDERED that sentencing for defendant Loutos is set for June 8, 2005 at 11:30 a.m. By May 31, 2005, the probation officer shall provide a supplemental presentence report.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: MAY 6, 2005